## ROBERT GOULD *v.* ROBERT A. HALL, JR., ET AL.
### (AC 20351)

Lavery, C. J., and Schaller and Cretella, Js.

Argued February 13—officially released June 26, 2001

*Eric R. Posmantier,* with whom, on the brief, was *Andrew P. Nemiroff,* for the appellant (defendant).

*Stephen D. Wippermann,* for the appellee (plaintiff).

SCHALLER, J. The defendant,[1] Robert A. Hall, Jr., appeals from the judgment of the trial court, rendered upon acceptance of a report from an attorney trial referee, in favor of the plaintiff, Robert Gould, on the third count of the defendant's counterclaim in which he sought damages for breach of contract. The defendant claims on appeal that the trial court improperly accepted the attorney trial referee's report over his objection, which was based on claims that the referee failed to consider a document admitted into evidence as a full exhibit and whether an implied contract existed between the parties. We affirm the judgment of the trial court.

The plaintiff was the managing partner and held 80 percent of the ownership interest in a general partnership, Kingsley Associates, that owned an apartment building, Kingsley Court. The defendant, an attorney, held an 8 percent interest in the partnership as trustee. The partnership, which was created by written agreement in May, 1982, was to expire in May, 1992. The plaintiff and the defendant could not reach an agreement as to the disposition of the partnership property. In November, 1996, the defendant, acting as a general partner on behalf of Kingsley Associates, conveyed eight condominium units belonging to Kingsley Associates to himself as trustee.

---

[1] This action was brought against the defendant Robert A. Hall, Jr., in his individual capacity and as trustee. We refer to Robert Hall in his individual capacity as the defendant in this opinion.

The plaintiff thereafter filed a two count complaint. In the first count, the plaintiff sought damages for the defendant's improper transfer of title to eight condominium units. The second count of the complaint sought the reconveyance of the eight condominiums to the partnership, Kingsley Associates.

In response, the defendant filed an answer and a three count counterclaim. In the first count, the defendant sought the permanent appointment of a receiver to wind up the affairs of the partnership. In the second count, he requested partition in kind of the remaining twenty-two condominium units owned by the partnership. In the third count, the defendant sought damages for breach of contract.

The case was referred to an attorney trial referee. The referee found the following pertinent facts. The defendant prepared the 1982 partnership agreement as the attorney for the plaintiff's father, Harry Gould, who was the majority owner and managing partner of Kingsley Associates. Harry Gould died in 1985, and his interest in the partnership passed to the plaintiff. The defendant, as an attorney, never billed the plaintiff or the partnership for legal services, and the defendant failed to produce any evidence that he rendered legal services to the plaintiff or to the partnership. The apartments were converted to condominiums in September, 1987, and the partnership was due to expire on May 13, 1992. Fifty-one condominium units were sold and twenty-two units remained unsold. The defendant conveyed eight units to himself as trustee without authorization. The parties could not agree on an orderly dissolution of the partnership. As to his breach of contract claim, the defendant failed to produce any written agreement with either the plaintiff or the partnership entitling him to $175,000 for services rendered in connection with converting the apartments to condominiums.

The attorney trial referee concluded that (1) the defendant did not prove that he rendered legal services to the plaintiff or to the partnership, (2) the defendant rendered legal services only to and on behalf of Harry Gould, (3) the eight units that the defendant conveyed to himself as trustee, without authority from the plaintiff or the partnership, should be reconveyed to the partnership, (4) Edward Schecter, an accountant, who was appointed temporary receiver by agreement of the parties, should be appointed a permanent receiver to supervise the orderly dissolution of the partnership and (5) the defendant was not entitled to additional compensation for condominium conversion because he failed to prove that the plaintiff breached an express contract to pay him a condominium conversion fee and because he did not request alternative relief, for example, under a quasi contract claim.

The defendant prevailed on the first count of the complaint, which sought damages for improper transfer of the condominium units, and the first count of the counterclaim, which sought the appointment of a receiver. The plaintiff prevailed on the second count of the complaint, which sought reconveyance of the eight condominium units to the partnership, and the third count of the counterclaim, which sought damages for breach of contract. The attorney trial referee concluded that the ruling on the first count of the counterclaim rendered the second count of the counterclaim, which sought partition of the remaining twenty-two condominium units, moot.

The defendant moved to correct the attorney trial referee's report, pursuant to Practice Book (1998) §§ 19-12 and 19-14, as follows: (1) the referee's reference to a business record admitted into evidence but "not for its truth" should be corrected to read the "report is evidence of the alleged agreement because it reflects moneys that were due to [the defendant] for the conver-

sion"; (2) the "agreement" between the plaintiff and the partnership for a conversion fee, as alleged in the counterclaim, was improperly limited to an express contract when it properly included a claim for an implied in fact contract; (3) a September 20, 1988 letter was evidence of the agreement regarding conversion expenses; (4) acts undertaken by the defendant manifest an intention on the part of the plaintiff to pay him a condominium conversion fee in the amount claimed; and (5) the defendant is entitled to recover $53,803.70 as the balance due for his conversion fee.

The attorney trial referee declined to make any substantive changes in her report or recommendations in response to the defendant's motion to correct. The court adopted the report and rendered judgment in accordance with the report. The defendant now appeals from that judgment.

We begin by setting forth the applicable standards of review regarding questions of fact and issues of law. "It is axiomatic that [a] reviewing authority may not substitute its findings for those of the trier of the facts. This principle applies no matter whether the reviewing authority is the Supreme Court . . . the Appellate Court . . . or the Superior Court reviewing the findings of . . . attorney trial referees. See Practice Book § 443 [now § 19-17] . . . . This court has articulated that attorney trial referees and factfinders share the same function . . . whose determination of the facts is reviewable in accordance with well established procedures prior to the rendition of judgment by the court. . . .

"The factual findings of a [trial referee] on any issue are reversible only if they are clearly erroneous. . . . [A reviewing court] cannot retry the facts or pass upon the credibility of the witnesses. . . . A finding of fact is clearly erroneous when there is no evidence in the

record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." (Citation omitted; internal quotation marks omitted.) *Meadows* v. *Higgins*, 249 Conn. 155, 162, 733 A.2d 172 (1999).

I

The defendant first claims that the court improperly accepted the attorney trial referee's report over his objection, which was based on claims that the referee improperly failed to consider a document admitted into evidence as a full exhibit. We are not persuaded.

Schecter, who was appointed temporary receiver by agreement of the parties, generated an audit report that showed moneys due the defendant for the conversion. Schecter generated the report in response to the defendant's concern that a third party who managed the apartment units, Charles Sabine, had overpaid himself for the process of converting the apartments to condominium units. Additional evidence on the contract claim considered by the attorney trial referee included an unsigned copy of a document on the defendant's letterhead that the defendant claimed to be an agreement between himself and Gould dated September 21, 1988. The document stated that the defendant was to be paid $175,000 for services "pertaining to all phases of the condominium conversion." There also was a computer printout from Sabine detailing conversion expenses. The defendant did not call Schecter as a witness to authenticate his report. The plaintiff testified that he had confronted the defendant after receiving the report as to the figure reflecting the defendant's fees. The plaintiff also presented a letter sent to the defendant dated September 24, 1988, which indicated that the original agreement reflected the fees for the conversion.

The defendant's claim focuses on the attorney trial referee's statement that Schecter's "report was entered as a business report and not for its truth." The defendant claims that this statement establishes that the referee failed to accord the report the proper weight. The defendant does not contend that the referee improperly excluded the report.

It is without question that business records may be admitted under an exception to the hearsay rule. See *State* v. *Berger*, 249 Conn. 218, 230, 733 A.2d 156 (1999). It is further without question that "[h]earsay is an out-of-court statement offered for the truth of the matter asserted therein." *Rogers* v. *Board of Education*, 252 Conn. 753, 767, 749 A.2d 1173 (2000). The statement by the attorney trial referee misstated evidentiary law.[2] This misstatement as to the basis for admissibility is not, however, ground for reversal.

The attorney trial referee, as the trier of fact, made a number of statements regarding the evidence offered by the defendant. The referee directed her statements at the credibility of and the weight to be given to the evidence and testimony adduced by the defendant. "Nothing, of course, is more elementary than that the trier is the final judge of the credibility of witnesses and of the weight to be accorded their testimony." (Internal quotation marks omitted.) *Koennicke* v. *Maiorano*, 43 Conn. App. 1, 14 n.13, 682 A.2d 1046 (1996). The context of the referee's statement at issue reflects her intrinsic duty to determine the weight and credibility to be given to the evidence presented by the defendant.[3]

[2] The business report in question cannot be construed as a nonhearsay statement, such as a verbal act, that is, evidence offered to show the declarant's feelings or state of mind, a statement to show the effect on the hearer or reader, or a statement to test the credibility of a witness. See C. Tait & J. LaPlante, Connecticut Evidence (2d Ed. 1988) § 11.3, pp. 321–25.

[3] The attorney trial referee's report states in relevant part: "[The defendant] testified to having seen the original, fully executed letter in Sabine's office, several weeks after its date. [The defendant's] testimony on the issue of the agreement is hollow and lacking in credibility.

Mindful of the role of the attorney trial referee to make credibility determinations, we conclude that the statement regarding the report is nothing more than such a determination and, accordingly, was not improper. The referee "was free to accept or reject any portion of the evidence presented by either party." *Coombs* v. *Phillips*, 5 Conn. App. 626, 627, 501 A.2d 395 (1985). The decision of the attorney trial referee to accord the report lesser weight than the plaintiff's testimony is not improper. The defendant failed to support the report with testimony of the accountant who had created it. In contrast, the plaintiff testified before the attorney trial referee that he disagreed with the amount quoted in the report as due the defendant. We conclude that the determination of the attorney trial referee is properly characterized as an evaluation of the credibility and weight accorded to evidence and, as such, was proper.

II

The defendant next claims that the attorney trial referee improperly interpreted his third count as being solely a breach of express contract claim. The defendant argues that the court misconstrued the third count of his counterclaim and did not address his claim of breach of an implied in fact contract.[4] We disagree and

"[The defendant] was an experienced attorney. Why would he not retain at least one fully executed original contract for his files, particularly when it involved issues of the nature and magnitude involved? [The defendant] was not believable in his testimony that he observed a copy of the fully executed agreement in Sabine's office. He did not state that he requested the original agreement, for his own files, from Sabine, or even a copy."

With respect to the weight accorded the audit report, the attorney trial referee stated: "Schecter was not called as a witness, and he would have been the proper party to authenticate the report. In addition, [the plaintiff] testified that he confronted [the defendant] after having received the report with concerns and questions as to [the defendant's] fees. Schecter's report does not prove [the defendant's] claims for breach of contract."

[4] The defendant's counterclaim states in relevant part:

"5. On or about September 30, 1988, the plaintiff agreed that the defendant, Robert A. Hall, Jr., was entitled to receive a condominium conversion fee of $175,000 for his services in converting a seventy-three (73) unit apartment

conclude that the pleadings are most accurately described as setting forth a claim for breach of an express contract.

"[T]he interpretation of pleadings is always a question of law for the court . . . . We have pointed out that [t]he burden [is] upon the pleaders to make such averments that the material facts should appear with reasonable certainty; and for that purpose [the pleaders] were allowed to use their own language. Whenever that language fails to define clearly the issues in dispute, the court will put upon it such reasonable construction as will give effect to the pleadings in conformity with the general theory which it was intended to follow, and do substantial justice between the parties." (Internal quotation marks omitted.) *United Components, Inc.* v. *Wdowiak*, 239 Conn. 259, 264, 684 A.2d 693 (1996).

The court, reviewing the report of the attorney trial referee, concluded that "[t]he counterclaim . . . did not contain an allegation of quasi contract, a contract implied in fact or unjust enrichment. The counterclaim was alleged and tried on the basis of an express, written contract. Therefore, the attorney trial referee was justified in refusing to award a conversion fee to the defendant Hall on some theory neither pleaded nor proved."

complex . . . .

"6. The defendant was to be paid said fee at the rate of $2054.79 as each unit was sold and the balance of $25,000 to be paid upon the sale of the last unit.

"7. Based upon the plaintiff's percentage ownership of the property that comprised said partnership, he is liable to the defendant for 72.5 [percent] of said fees.

"8. Fifty-one (51) of the seventy-three (73) units have been sold entitling the defendant to a fee of $104,794.

"9. The defendant has received $75,788.

"10. The defendant is owed $29,006 for which the plaintiff is liable for $21,029.35.

"11. The plaintiff is also liable to the defendant for the additional amount of $50,899.35 representing his percentage share of the balance of said conversion fee."

This construction by both the court and the attorney trial referee of the counterclaim as a breach of an express agreement claim is not unreasonable.

"A contract implied in fact depends on an actual agreement that there be an obligation created by law that imposes a duty to perform, and it may be inferred from words, actions or conduct. . . . It is not fatal to a finding of an implied contract that there were no express manifestations of mutual assent if the parties, by their conduct, recognized the existence of contractual obligations. . . . Whether and on what terms a contractual commitment has been undertaken are ultimately questions of fact which, like any other findings of fact, may be overturned only if the trial court's determinations are clearly erroneous." (Citations omitted; internal quotation marks omitted.) *Homecare, Inc.* v. *Acquarulo*, 38 Conn. App. 772, 775, 663 A.2d 412 (1995).

The defendant's offer of proof consisted of a letter that included an unsigned agreement between himself and the plaintiff dated September 21, 1988. The counterclaim alleges that "[o]n or about September 30, 1988, the plaintiff agreed that the defendant, Robert A. Hall, Jr., was entitled to receive a condominium conversion fee . . . for his services in converting a seventy-three (73) unit apartment complex . . . ." The agreement produced is partially executed, signed only by the defendant and printed on the defendant's letterhead, and states that the defendant would be paid $175,000 for his services. The counterclaim states that the defendant "was entitled to receive a condominium conversion fee of $175,000 . . . ." The remaining offer of proof consisted of a computer printout detailing conversion expenses, the Schecter report and the defendant's testimony as to services performed. In light of the substantial similarity between the date and content of the letter agreement and the relevant date and content of the counterclaim, it was reasonable for the attorney trial

referee and the court to limit the claim to breach of an express contract.[5] We conclude, therefore, that the court properly limited the counterclaim to breach of an express agreement.

The judgment is affirmed.

In this opinion the other judges concurred.

---

[5] We also note that the defendant, having failed to establish an express agreement, failed to adhere to the requirement of Practice Book (1998) § 19-13, repealed as of January 1, 2000, to correct the attorney trial referee's report when the referee omitted facts required to establish a contract implied in fact. The parties were bound by the rules of practice in place at the time of the action, which provided as follows: "The parties may seek additions and corrections to the facts contained in [the attorney trial referee's] report by filing a motion to correct with the attorney trial referee pursuant to Practice Book § 438, now Practice Book . . . § 19-12. After the attorney trial referee responds to any motions to correct, the parties may file with the trial court exceptions to findings of fact pursuant to Practice Book § 439, now Practice Book . . . § 19-13, or objections to factual conclusions or rulings pursuant to Practice Book § 440, now Practice Book . . . § 19-14." *Kallas* v. *Harnen*, 48 Conn. App. 253, 256, 709 A.2d 586, cert. denied, 244 Conn. 935, 717 A.2d 232 (1998). In the present case, the defendant did not file a motion pursuant to Practice Book § 19-13 to contest facts that the referee found or failed to find. Having failed to do so, he is limited to the facts in the record, which are inadequate to establish the existence of an implied in fact contract.

