******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

CONNECTICUT LIGHT AND POWER COMPANY *v.*
GARY PROCTOR
(AC 35952)

Lavine, Alvord and Bear, Js.

*Argued April 15—officially released June 30, 2015*

(Appeal from Superior Court, judicial district of
Tolland, Hon. Lawrence C. Klaczak, judge trial referee.)

*Derek V. Oatis*, for the appellant (defendant).

*Alexander G. Snyder*, for the appellee (plaintiff).

*Opinion*

BEAR, J. The defendant, Gary Proctor, appeals from the judgment of the trial court in favor of the plaintiff, Connecticut Light & Power Company, on the first count of its complaint alleging an implied in fact contract between the parties.[1] The defendant claims on appeal that the court improperly found the existence of an implied in fact contract subjecting him to liability for certain electrical services. We affirm the judgment of the court.

The record reveals the following relevant facts and procedural history. Prior to June, 2008, the defendant was employed by Avicola of America (Avicola) as a general manager of a chicken business located on a farm at 44 Upper Butcher Road in Ellington.[2] In June, 2008, the chicken business was purchased by Robert Chan doing business as Eastern Poultry and Pedigree Chicks (Pedigree Chicks). When the Avicola business was sold, the defendant became employed as a consultant to Pedigree Chicks.

On August 20, 2008, the defendant telephoned the plaintiff and sought to establish an electrical services account for Pedigree Chicks. Pedigree Chicks, however, was not registered with the Secretary of State, and thus, under the plaintiff's rules, was not eligible for an account with it.[3] The defendant declined to assume personal responsibility for the costs of providing electricity to the farm for Pedigree Chicks by having the account placed in his name, and, therefore, no such account was established at that time.

On November 26, 2008, the defendant again telephoned the plaintiff concerning the establishment of an electrical services account for Pedigree Chicks. During the telephone call to the plaintiff, the defendant provided the plaintiff with his full name, home address, home and cellular telephone numbers, and his social security number. This information, according to the plaintiff, is obtained only when a party such as the defendant is assuming responsibility for an electrical services account. The defendant additionally told the plaintiff that he would assume responsibility for all electrical services to the farm and chicken business on and after June 20, 2008, the date of the purchase of the chicken business by Pedigree Chicks.[4] The plaintiff mailed to the defendant a written application for service and a letter asking the defendant to complete, sign, and return the application with a security deposit.[5] According to the plaintiff, the application for service is sent contemporaneously with the creation of an account, and the letter addressed to the defendant and sent with the application was dated November 26, 2008. The defendant did not complete and return the application, but rather claimed to have traveled in his car to New Jersey to deliver the application to Chan.[6]

The plaintiff did not receive any payment for the electrical services it provided, and on August 20, 2009, it terminated the provision of electrical services to the defendant for the Pedigree Chicks business. At the time of the termination of services, the total amount owed was $14,620.51.

On October 26, 2011, the defendant was served with the plaintiff's two count complaint, alleging breach of an implied in fact contract in the first count, and unjust enrichment in the second count. On June 11, 2013, the case was tried to the court, and on June 19, 2013, the court rendered judgment in favor of the plaintiff in the amount of $14,620.51 on the count of implied in fact contract and found in favor of the defendant on the count of unjust enrichment.[7] In a brief memorandum of decision, the court stated: "The plaintiff brings this action in two counts (implied contract and unjust enrichment) alleging that it provided electrical service to property located at 44 Upper Butcher Road in Ellington, Connecticut at the request of [the defendant]. The amount of the unpaid billings is $14,620.51. The defendant claims he is not responsible for said debt.

"The property was utilized as a business enterprise known as 'Pedigree Chicks,' which was not registered as a business with the State of Connecticut. Pedigree Chicks was a poultry operation and [the defendant] was a part-time employee who, at the time, worked about three hours a day twice a week.

"The owner of the business (which was just starting up in June 2008) was a gentleman from New Jersey named 'Chan.' At that point in time [the defendant] (rather naively) called [the plaintiff] to arrange for electrical service for the poultry business. Mr. Chan was not present at the trial and [the defendant] was the only defense witness. Two [of the plaintiff's] employees testified from business records about the contact person ([the defendant]) and the billings for electrical service before the account was closed in August 2009. Adding to the confusion was the fact that some correspondence about the account was sent to the Ellington business address while the defendant's home address was in Bolton.

"When [the defendant] finally realized he was being billed he drove to New Jersey and met with Mr. Chan, trying to persuade him to take responsibility for the [plaintiff's] bill. That effort was unsuccessful and this lawsuit was commenced.

"[The defendant] was of the opinion that he was doing Mr. Chan a favor by arranging for electrical service, but [the plaintiff] had the [defendant's] name, his social security number, and his home address on the application form. [The defendant] never asked to close off the account and [the plaintiff] complied with Public Utility regulations in its handling of the account.

"While the court is sympathetic to [the defendant's] plight the court finds there was an implied contract entered into by [the defendant] with the plaintiff. He mistakenly relied on Mr. Chan to pay the electrical bills.

"Judgment for the plaintiff in the amount of $14,620.51 (on the count of implied contract). Judgment for the defendant on the count of unjust enrichment. Costs are not awarded."[8]

On August 15, 2013, the defendant appealed to this court.

We begin by setting forth the relevant standard of review and the legal principles that inform our analysis. As this court has previously explained in cases of implied in fact contracts, "[a] contract implied in fact depends on an actual agreement that there be an obligation created by law that imposes a duty to perform, and it may be inferred from words, actions or conduct. . . . It is not fatal to a finding of an implied contract that there were no express manifestations of mutual assent if the parties, by their conduct, recognized the existence of contractual obligations. . . . Whether and on what terms a contractual commitment has been undertaken are ultimately questions of fact which, like any other findings of fact, may be overturned only if the trial court's determinations are clearly erroneous." (Internal quotation marks omitted.) *Gould* v. *Hall*, 64 Conn. App. 45, 54, 779 A.2d 208 (2001).

"The resolution of conflicting factual claims falls within the province of the trial court. . . . The trial court's findings are binding upon this court unless they are clearly erroneous in light of the evidence and the pleadings in the record as a whole." (Internal quotation marks omitted.) *Old Colony Construction, LLC* v. *Southington*, 316 Conn. 202, 224, 113 A.3d 406 (2015). "A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." (Internal quotation marks omitted.) *Budrawich* v. *Budrawich*, 156 Conn. App. 628, 637,    A.3d    (2015).

"Where there is conflicting evidence . . . we do not retry the facts or pass upon the credibility of the witnesses. . . . The probative force of conflicting evidence is for the trier to determine. . . . [I]t is well established that a reviewing court is not in the position to make credibility determinations. . . . This court does not retry the case or evaluate the credibility of the witnesses. . . . Rather, we must defer to the [trier of fact's] assessment of the credibility of the witnesses based on its firsthand observation of their conduct, demeanor and attitude." (Citation omitted; internal quotation marks omitted.) *Eaddy* v. *Bridgeport*, 156 Conn. App. 597, 606–607, 112 A.3d 230 (2015).

"Whether [a] contract is styled express or implied involves no difference in legal effect, but lies merely in the mode of manifesting assent. . . . A true implied [in fact] contract can only exist [however] where there is no express one. It is one which is inferred from the conduct of the parties though not expressed in words. Such a contract arises where a plaintiff, without being requested to do so, renders services under circumstances indicating that he expects to be paid therefor, and the defendant, knowing such circumstances, avails himself of the benefit of those services. In such a case, the law implies from the circumstances, a promise by the defendant to pay the plaintiff what those services are reasonably worth. . . . Although both express contracts and contracts implied in fact depend on actual agreement . . . [i]t is not fatal to a finding of an implied contract that there were no express manifestations of mutual assent if the parties, by their conduct, recognized the existence of contractual obligations." (Citations omitted; internal quotation marks omitted.) *Janusauskas* v. *Fichman*, 264 Conn. 796, 804–805, 826 A.2d 1066 (2003).

"The term implied contract . . . often leads to confusion because it can refer to an implied in fact contract or to an implied in law contract. An implied in fact contract is the same as an express contract, except that assent is not expressed in words, but is implied from the conduct of the parties. . . . On the other hand, an implied in law contract is not a contract, but an obligation which the law creates out of the circumstances present, even though a party did not assume the obligation . . . . It is based on equitable principles to operate whenever justice requires compensation to be made. . . . An implied in law contract may arise due to one party being unjustly enriched to the detriment of the other party. . . . Accordingly, an implied in law contract is another name for a claim for unjust enrichment." (Citations omitted; internal quotation marks omitted.) *Vertex, Inc.* v. *Waterbury*, 278 Conn. 557, 573–74, 898 A.2d 178 (2006).[9]

To establish the existence of an implied in fact contract, the plaintiff must prove that it rendered services with the reasonable expectation that the defendant would pay for the services and that the defendant accepted those services in a manner that reasonably would lead the plaintiff to believe that the defendant intended to pay for the services. See *Janusauskas* v. *Fichman*, supra, 264 Conn. 804–805 (implied in fact contract "arises where a plaintiff, without being requested to do so, renders services under circumstances indicating that he expects to be paid therefor, and the defendant, knowing such circumstances, avails himself of the benefit of those services" [internal quotation marks omitted]).

The court found that the plaintiff proved the exis-

tence of an implied in fact contract,[10] and we conclude that the defendant has not demonstrated that finding to be clearly erroneous under either prong of the clear error standard, e.g., that a finding of fact is clearly erroneous when there is no evidence in the record to support it, or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] As set forth and discussed in more detail in this opinion, the first count of the plaintiff's complaint alleged an implied in fact contract, and the second count alleged unjust enrichment, which is also known as an implied in law contract.

[2] The farm located at 44 Upper Butcher Road in Ellington was leased to Avicola, and later to Eastern Poultry and Pedigree Chicks, by its owner, Henry Seifert.

[3] To set up a commercial account with the plaintiff, a business must be registered with the Secretary of State in accordance with the applicable state statutes and regulations.

[4] When this assumption of responsibility occurred, the plaintiff was able to close the account of Avicola, its prior customer with respect to the chicken business on the farm. The new account was denominated by the plaintiff as "Gary Proctor d/b/a Pedigree Chicks."

[5] We note that the application for service and letter were mailed to the defendant's home address and not to Pedigree Chick's business address.

[6] The defendant testified that "I got in my car, and I took it directly to Mr. Chan and said, you know, you've got to have this in your name, and you've got to pay the bill, or, you know, pay the application fee."

[7] We note that the equitable remedy of unjust enrichment is not available to a plaintiff if there was in fact a contract between the parties, as found by the court in this case, although both theories may be pleaded separately in a complaint. See *Meaney* v. *Connecticut Hospital Assn., Inc.*, 250 Conn. 500, 517–18, 735 A.2d 813 (1999) (party cannot be held liable simultaneously for breach of express contract and implied in law contract governing same subject matter); *Vertex, Inc.* v. *Waterbury*, 278 Conn. 557, 574, 898 A.2d 178 (2006) ("an implied in law contract is another name for a claim for unjust enrichment"). A court, therefore, cannot grant relief on a theory of unjust enrichment unless the court first finds that there was no contract between the parties. See *Laser Contracting, LLC* v. *Torrance Family Ltd. Partnership*, 108 Conn. App. 222, 229, 947 A.2d 989 (2008).

[8] Because the court rendered judgment for the defendant on the unjust enrichment count and the plaintiff did not file an appeal or cross appeal, we do not discuss the substance of the second count further in this opinion.

[9] "Unjust enrichment applies wherever justice requires compensation to be given for property or services rendered under a contract, and no remedy is available by an action on the contract. . . . A right of recovery under the doctrine of unjust enrichment is essentially equitable, its basis being that in a given situation it is contrary to equity and good conscience for one to retain a benefit which has come to him at the expense of another. . . . With no other test than what, under a given set of circumstances, is just or unjust, equitable or inequitable, conscionable or unconscionable, it becomes necessary in any case where the benefit of the doctrine is claimed, to examine the circumstances and the conduct of the parties and apply this standard." (Citations omitted; internal quotation marks omitted.) *Hartford Whalers Hockey Club* v. *Uniroyal Goodrich Tire Co.*, 231 Conn. 276, 282–83, 649 A.2d 518 (1994).

[10] There was no express written contract between the parties in this case because the defendant did not complete, sign, and return the application for service with a deposit to the plaintiff. The absence of a written contract or agreement, however, was not fatal to the plaintiff's claim, as the court found that there was an implied in fact contract pursuant to the allegations of the first count of the plaintiff's complaint.