## YALE DIAGNOSTIC RADIOLOGY *v*. ESTATE OF HARUN FOUNTAIN ET AL.
### (SC 16922)

Sullivan, C. J., and Borden, Katz, Palmer and Zarella, Js.

352

Argued September 22, 2003—officially released January 13, 2004

*Marc L. Glenn*, for the appellants (defendants).

*Christopher J. Picard*, for the appellee (plaintiff).

*Opinion*

BORDEN, J. The sole issue in this appeal[1] is whether a medical service provider that has provided emergency medical services to a minor may collect for those services from the minor when the minor's parents refuse or are unable to make payment. The defendants, the estate of Harun Fountain, an unemancipated minor, and Vernetta Turner-Tucker (Tucker), the fiduciary of Fountain's estate, appeal from the judgment of the Superior Court following an appeal from an order of the Probate Court for the district of Milford. The Probate Court had denied the motion of the plaintiff, Yale Diagnostic Radiology, for distribution of funds from the estate. The trial court ordered recovery of the funds sought by the plaintiff. The defendants claim that the trial court improperly determined that they are liable to the plaintiff for payment of Fountain's medical expenses. We affirm the judgment of the trial court.

The plaintiff filed a proof of claim against the defendants and a motion for distribution of funds in the Probate Court. The Probate Court denied the motion for distribution of funds. The plaintiff appealed to the trial court, which sustained the appeal and rendered judgment in favor of the plaintiff.

The following facts and procedural history are undisputed. In March, 1996, Fountain was shot in the back of the head at point-blank range by a playmate. As a result of his injuries, including the loss of his right eye, Fountain required extensive lifesaving medical services from a variety of medical services providers, including

[1] The defendants appealed from the judgment of the Superior Court to the Appellate Court, and we transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.

the plaintiff. The expense of the services rendered by the plaintiff to Fountain totaled $17,694. The plaintiff billed Tucker, who was Fountain's mother,[2] but the bill went unpaid and, in 1999, the plaintiff obtained a collection judgment against her. In January, 2001, however, all of Tucker's debts were discharged pursuant to an order of the Bankruptcy Court for the District of Connecticut. Among the discharged debts was the judgment in favor of the plaintiff against Tucker.

During the time between the rendering of medical services and the bankruptcy filing, Tucker, as Fountain's next friend, initiated a tort action against the boy who had shot him. Among the damages claimed were "substantial sums of money [expended] on medical care and treatment . . . ." A settlement was reached, and funds were placed in the estate established on Fountain's behalf under the supervision of the Probate Court. Tucker was designated the fiduciary of that estate. Neither Fountain nor his estate was involved in Tucker's subsequent bankruptcy proceeding.

Following the discharge of Tucker's debts, the plaintiff moved the Probate Court for payment of the $17,694 from the estate. The Probate Court denied the motion, reasoning that, pursuant to General Statutes § 46b-37 (b),[3] parents are liable for medical services rendered

---

[2] There is no reference to Fountain's father in the record or briefs of either party. We therefore assume that he is not available as a viable source of payment of the plaintiff's bill for services rendered to Fountain.

[3] General Statutes § 46b-37 (b) provides: "Notwithstanding the provisions of subsection (a) of this section, it shall be the joint duty of each spouse to support his or her family, and both shall be liable for: (1) The reasonable and necessary services of a physician or dentist; (2) hospital expenses rendered the husband or wife or minor child while residing in the family of his or her parents; (3) the rental of any dwelling unit actually occupied by the husband and wife as a residence and reasonably necessary to them for that purpose; and (4) any article purchased by either which has in fact gone to the support of the family, or for the joint benefit of both."

Although § 46b-37 (b) was amended by No. 01-195 of the 2001 Public Acts to include a technical change for purposes of gender neutrality, that change is not relevant to this appeal. References herein are to the current revision of § 46b-37 (b).

to their minor children, and that a parent's refusal or inability to pay for those services does not render the minor child liable. The Probate Court further ruled that minor children are incapable of entering into a legally binding contract or consenting, in the absence of parental consent, to medical treatment. The Probate Court held, therefore, that the plaintiff was barred from seeking payment from the estate.

The plaintiff appealed from the decision of the Probate Court to the trial court. The trial court sustained the appeal and rendered judgment for the plaintiff, holding that, under Connecticut law, minors are liable for payment for their "necessaries," even though the provider of those necessaries "relies on the parents' credit for payment when [the] injured child lives with his parents . . . ." The trial court reasoned that, although parents are primarily liable, pursuant to § 46b-37 (b) (2), for their child's medical bills, the parents' failure to pay renders the minor secondarily liable. Additionally, the trial court relied on the fact that Fountain had obtained money damages, based in part on the medical services rendered to him by the plaintiff. This appeal followed.

The defendants claim that the trial court improperly determined that a minor may be liable for payment for emergency medical services rendered to him. They further claim that the trial court, in reaching its decision, improperly considered the fact that Fountain had received a settlement, based in part on his medical expenses. We disagree with both of the defendants' claims.

Connecticut has long recognized the common-law rule that a minor child's contracts are voidable. See *Shutter* v. *Fudge*, 108 Conn. 528, 530, 143 A. 896 (1928); *Strong* v. *Foote*, 42 Conn. 203, 205 (1875). Under this rule, a minor may, upon reaching majority, choose

either to ratify or to avoid contractual obligations entered into during his minority. See 4 S. Williston, Contracts (4th Ed. 1992) § 8:14, pp. 271–72. The traditional reasoning behind this rule is based on the well established common-law principles that the law should protect children from the detrimental consequences of their youthful and improvident acts, and that children should be able to emerge into adulthood unencumbered by financial obligations incurred during the course of their minority. See *Shutter* v. *Fudge*, supra, 530. The rule is further supported by a policy of protecting children from unscrupulous individuals seeking to profit from their youth and inexperience.

The rule that a minor's contracts are voidable, however, is not absolute. An exception to this rule, eponymously known as the doctrine of necessaries, is that a minor may not avoid a contract for goods or services necessary for his health and sustenance. See 5 S. Williston, Contracts (4th Ed. 1993) § 9:18, pp. 149–57. Such contracts are binding even if entered into during minority, and a minor, upon reaching majority, may not, as a matter of law, disaffirm them. Id.

The parties do not dispute the fact that the medical services rendered to Fountain were necessaries; rather, their dispute centers on whether Connecticut recognizes the doctrine of necessaries. As evidenced by the following history, the doctrine of necessaries has long been a part of Connecticut jurisprudence.

In *Strong* v. *Foote*, supra, 42 Conn. 205, this court affirmed a judgment in favor of a dentist against a minor for services rendered to the minor, who had an estate and who was an orphan for whom a guardian had been appointed. This court stated: "In suits against minors, instituted by persons who have rendered services or supplied articles to them, the term 'necessaries' is not invariably used in its strictest sense, nor is it limited

to that which is requisite to sustain life, but includes whatever is proper and suitable in the case of each individual, having reference to his circumstances and condition in life." Id. The court further noted that the services were "within the legal limitations of the word 'necessaries,'" and that the plaintiff was not required to inquire as to the minor's guardianship before rendering the services because the services were "necessary to meet an unsupplied want." Id.

Furthermore, from 1907 to 1959, statutory law regarding minors and the doctrine of necessaries remained unchanged. General Statutes (1958 Rev.) § 42-2 provided: "Capacity to buy and sell is regulated by the general law concerning capacity to contract, and to transfer and acquire property. When necessaries are sold and delivered to an infant, or to a person who by reason of mental incapacity or drunkenness is incompetent to contract, he must pay a reasonable price therefor. Necessaries in this section mean goods suitable to the condition in life of such infant or other person, and to his actual requirements at the time of delivery." Therefore, insofar as it referred to minors, this statute codified the common-law doctrine of necessaries. See *Shutler* v. *Fudge*, supra, 108 Conn. 533. We recognize that § 42-2 was repealed in 1959; see Public Acts 1959, No. 133, § 1-103; when Connecticut adopted the Uniform Commercial Code. That repeal was not intended, however, to eliminate the doctrine because the statute was replaced by General Statutes § 42a-1-103, which contemplated that the Uniform Commercial Code would continue to be supplemented by the general principles of contract law regarding minors.[4]

---

[4] General Statutes § 42a-1-103 provides: "Unless displaced by the particular provisions of this title, *the principles of law and equity,* including the law merchant *and the law relative to capacity to contract,* principal and agent, estoppel, fraud, misrepresentation, duress, coercion, mistake, bankruptcy, or other validating or invalidating cause shall supplement its provisions." (Emphasis added.)

In light of these precedents, we conclude that Connecticut recognizes the doctrine of necessaries. We further conclude that, pursuant to the doctrine, the defendants are liable for payment to the plaintiff for the services rendered to Fountain.

We have not heretofore articulated the particular legal theory underlying the doctrine of necessaries.[5] We therefore take this occasion to do so, and we conclude

[5] Courts in other jurisdictions that have held that minors may be liable pursuant to the doctrine of necessaries for medical services have done so by applying varying legal theories. See annot., Infant's Liability for Medical, Dental, or Hospital Services, 53 A.L.R.4th 1249 (1987). For example, some courts have held minors liable only if the creditor can show that the minor was not living with or being supported by his or her parents at the time the contract arose or the services were rendered, or, put another way, only if it is shown that the services were furnished on the minor's credit and not that of his or her parents. See *North Carolina Baptist Hospitals, Inc.* v. *Franklin*, 103 N.C. App. 446, 450, 405 S.E.2d 814 (1991) (minor not liable when parents provided all necessaries but were found not to be willing or able to pay one bill); see also *Kennedy* v. *Kiss*, 89 Ill. App. 3d 890, 894–95, 412 N.E.2d 624 (1980); *Gaspard* v. *Breaux*, 413 So. 2d 288, 290–91 (La. App. 1982); *Hoyt* v. *Casey*, 114 Mass. 397, 399 (1874); *Westrate* v. *Schipper*, 284 Mich. 383, 386, 279 N.W. 870 (1938); *Gardner* v. *Flowers*, 529 S.W.2d 708, 711 (Tenn. 1975). Some courts have held that liability is only established where an express or implied in fact contract arose between the minor and the creditor. See *North Carolina Baptist Hospitals, Inc.* v. *Franklin*, supra, 450; *Madison General Hospital* v. *Haack*, 124 Wis. 2d 398, 404, 369 N.W.2d 663 (1985). Still other courts have held minors liable after determining that the goods or services rendered were necessaries, and the minor's parent or guardian was unwilling or unable to pay for them. See *Schmidt* v. *Prince George's Hospital*, 366 Md. 535, 555, 784 A.2d 1112 (2001) (minor's father's use of insurance proceeds to buy minor car sufficient for finding that father was unwilling to pay minor's medical expenses); see also *In re Dzwonkiewicz's Estate*, 231 Mich. 165, 167, 203 N.W. 671 (1925); *Greenville Hospital System* v. *Smith*, 269 S.C. 653, 655, 239 S.E.2d 657 (1977); *Gardner* v. *Flowers*, supra, 711. Some courts, however, have held minors liable under the doctrine of necessaries primarily due to the fact that the minor had recovered from a tortfeasor. See, e.g., *Cole* v. *Wagner*, 197 N.C. 692, 698–99, 150 S.E. 339 (1929). Still other courts have reasoned that the minor's ever present secondary liability for payment for medical services rendered to him gives rise to an implied in law contract. See *In re Dzwonkiewicz's Estate*, supra, 167; *In the Matter of Peacock*, 261 N.C. 749, 753, 136 S.E.2d 91 (1964); *McAllister* v. *Saginaw Timber Co.*, 171 Wash. 448, 451, 18 P.2d 41 (1933). As we explain in the text of this opinion, we agree with this latter approach.

that the most apt theory is that of an implied in law contract, also sometimes referred to as a quasi-contract. We further conclude that based on this theory, the defendants are liable.

"In distinction to an implied [in fact] contract, a quasi [or implied in law] contract is not a contract, but an obligation which the law creates out of the circumstances present, even though a party did not assume the obligation . . . . *It is based on equitable principles* to operate whenever justice requires compensation to be made. . . . *Brighenti* v. *New Britain Shirt Corporation*, 167 Conn. 403, 407, 356 A.2d 181 (1974). With no other test than what, under a given set of circumstances, is just or unjust, equitable or inequitable, conscionable or unconscionable, it becomes necessary . . . to examine the circumstances and the conduct of the parties and apply this standard. *Cecio Bros., Inc.* v. *Greenwich*, 156 Conn. 561, 564–65, 244 A.2d 404 (1968)." (Emphasis in original; internal quotation marks omitted.) *Bershtein, Bershtein & Bershtein, P.C.* v. *Nemeth*, 221 Conn. 236, 242, 603 A.2d 389 (1992).

Thus, when a medical service provider renders necessary medical care to an injured minor, two contracts arise: the primary contract between the provider and the minor's parents; and an implied in law contract between the provider and the minor himself. The primary contract between the provider and the parents is based on the parents' duty to pay for their children's necessary expenses, under both common law[6] and statute.[7] Such contracts, where not express, may be implied in fact and generally arise both from the parties' conduct and their reasonable expectations. The primacy of this

---

[6] Our common law has long recognized the parents' obligation to provide for their minor child. See, e.g., *Finch* v. *Finch*, 22 Conn. 411, 415 (1853) ("[t]here is a law of our universal humanity . . . which impels parents, whether fathers or mothers, to protect and support their helpless children").

[7] For the text of § 46b-37 (b), see footnote 3 of this opinion.

contract means that the provider of necessaries must make all reasonable efforts to collect from the parents before resorting to the secondary, implied in law contract with the minor.

The secondary implied in law contract between the medical services provider and the minor arises from equitable considerations, including the law's disfavor of unjust enrichment. Therefore, where necessary medical services are rendered to a minor whose parents do not pay for them, equity and justice demand that a secondary implied in law contract arise between the medical services provider and the minor who has received the benefits of those services. These principles compel the conclusion that, in the circumstances of the present case, the defendants are liable to the plaintiff, under the common-law doctrine of necessaries, for the services rendered by the plaintiff to Fountain.

The present case illustrates the inequity that would arise if no implied in law contract arose between Fountain and the plaintiff. Fountain was shot in the head at close range and required emergency medical care. Under such circumstances, a medical services provider cannot stop to consider how the bills will be paid or by whom. Although the plaintiff undoubtedly presumed that Fountain's parent would pay for his care and was obligated to make reasonable efforts to collect from Tucker before seeking payment from Fountain, the direct benefit of the services, nonetheless, was conferred upon Fountain. Having received the benefit of necessary services, Fountain should be liable for payment for those necessaries in the event that his parents do not pay.

Furthermore, in the present case, we note, as did the trial court, that Fountain received, through a settlement with the boy who caused his injuries, funds that were calculated, at least in part, on the costs of the medical

services provided to him by the plaintiff in the wake of those injuries. Fountain, through Tucker, brought an action against the tortfeasor and, in his complaint, cited "substantial sums of money [expended] on medical care and treatment . . . ." This fact further supports a determination of an implied in law contract under the circumstances of the case.

The defendants claim, however, that the doctrine of necessaries has been legislatively abrogated by § 46b-37 (b) (2). See footnote 3 of this opinion. We disagree. Section 46b-37 (b) (2) governs the joint liability of parents for the support and maintenance of their family, and, in doing so, merely codifies the common-law principle, long recognized in Connecticut, that both parents are *primarily* responsible for providing necessary goods and services to their children. See *Finch* v. *Finch*, 22 Conn. 411, 415 (1853); see also footnote 6 of this opinion. Section 46b-37 (b) (2), however, is silent as to a child's *secondary* liability. That statute neither promotes nor prohibits a determination of secondary liability on the part of a minor when the minor has received emergency medical services and the parents are either unwilling or unable to pay for those services. We, therefore, decline the defendants' invitation to read into § 46b-37 (b) (2), which governs the relationship of parents to one another and to their creditors, any rule regarding the relationship of their minor children to those same creditors. Nothing in either the language or the purpose of § 46b-37 (b) (2) indicates an intent on the part of the legislature to absolve minors of their secondary common-law liability for necessaries.

To the contrary, the purposes behind the statutory rule that parents are primarily liable and the common-law rule, pursuant to the doctrine of necessaries, that a minor is secondarily liable, when read together, serve to encourage payment on contracts for necessaries. Those purposes are (1) to reinforce parents' obligation

to support their children, and (2) to provide a mechanism for collection by creditors when, nonetheless, the parents either refuse or are unable to discharge that obligation.

The defendants further contended, at oral argument before this court, that, even if we were to conclude that the doctrine of necessaries is applicable, the defendants are not liable to the plaintiff because there has been no showing that Tucker was unwilling or unable to provide necessaries to Fountain. Specifically, the defendants argue that, because Fountain lived in Tucker's home, it cannot be shown that, as a matter of law, Tucker was unwilling or unable to provide Fountain with necessary medical care. We disagree.

The undisputed facts show that Tucker had four years to pay the plaintiff's bill for the services rendered to Fountain. She did not pay that bill even when the plaintiff pursued a collection action against her. These facts are sufficient to show that Tucker was unwilling or unable to pay for Fountain's necessary medical services.

Furthermore, the premise underlying the legal structure placing primary liability in the parent and secondary liability in the minor, and requiring that the creditor first exhaust reasonable efforts to collect from the parent, is that the creditor has the legal capability, beyond moral suasion, to require the parent to pay. That premise simply disappears when the parent's primary obligation has been erased by an intervening bankruptcy.

This reasoning applies, moreover, whether the minor is living in the parent's home, as was the case here, or elsewhere. The place of the minor's residence is simply irrelevant to the question of whether the creditor has an enforceable claim against the parent. That is because the fact that Tucker may be supplying other necessaries, such as food and shelter, does not undermine the claim

that she has not made payment for this necessary medical service, which was already provided by the plaintiff to Fountain.

The judgment is affirmed.

In this opinion the other justices concurred.