## VERTEX, INC. *v.* CITY OF WATERBURY
## (SC 17550)

Borden, Norcott, Palmer, Vertefeuille and Zarella, Js.

Argued January 12—officially released June 13, 2006

*Matthew G. Conway,* with whom, on the brief, were *Paul H. D. Stoughton* and *Christopher M. Bunge,* for the appellant (plaintiff).

*Elaine M. Skoronski,* for the appellee (defendant).

*Opinion*

VERTEFEUILLE, J. The plaintiff, Vertex, Inc., appeals from the trial court's judgment in favor of the defendant, the city of Waterbury. The plaintiff claims that the trial court improperly dismissed, sua sponte, two counts of its complaint just before the trial was to begin, and incorrectly instructed the jury with regard to the third count, which alleged unjust enrichment. We agree with the plaintiff, and, accordingly, we reverse the judgment of the trial court.

The record reveals the following factual and procedural history. In March, 1999, the plaintiff sent a proposal letter to the defendant offering to perform specific services to prepare the defendant's computer systems for the year 2000 problem.[1] The defendant accepted the

---

[1] The year 2000 problem, which commonly was referred to as the Y2K problem, was a defect that existed in many software programs developed during the twentieth century when programmers, in an attempt to save computer memory, stored four digit years using only the last two digits and instructed the program to assume that the first two digits were "19." See generally United States Senate Special Committee on the Year 2000 Technology Problem, Investigating the Impact of the Year 2000 Problem: Summary of the Committee's Work in the 105th Congress (February 24, 1999), pp. 8–11. The defect presented itself when the user attempted to input into these programs dates in the twenty-first century, which these software

plaintiff's proposal and the parties entered into a written contract dated June 7, 1999, under which the plaintiff would install a certain software program on the defendant's computers and perform the tasks outlined in the plaintiff's March, 1999 proposal. Despite the fact that the written contract was not executed until June 7, 1999, the plaintiff commenced work in March, 1999. On July 1, 1999, the plaintiff submitted a proposal for additional work to remedy additional year 2000 problems that it had identified during its first three months of work for the defendant. The plaintiff alleges that the defendant accepted its July, 1999 proposal, that it performed this additional work, and that the defendant refused to pay for it. The defendant denies that it accepted the plaintiff's July, 1999 proposal, and contends that the additional work the plaintiff claims to have performed was within the scope of the earlier written contract. Thus, the defendant denies that it owes the plaintiff any additional money.

The plaintiff brought the present action against the defendant to recover for the services, outlined in the July, 1999 proposal, that it allegedly performed for the defendant. Specifically, the plaintiff, in its complaint, alleged the following causes of action: (1) breach of contract; (2) estoppel; and (3) unjust enrichment. On approximately February 20, 2004, after a jury had been selected, the trial court, in a chambers conference with counsel, ordered the parties to submit pretrial briefs by February 24, 2004, on the legal theories of the three causes of action alleged in the complaint. Both parties complied with the trial court's order and submitted briefs on February 24, 2004. On the following day, the trial court issued a memorandum of decision in which it dismissed, sua sponte, the first two counts of the

programs interpreted as the corresponding two digit year in the twentieth century. See id., p. 8.

plaintiff's complaint and allowed the plaintiff to proceed to trial only on the unjust enrichment count.

The case was tried to the jury and, at the close of the plaintiff's case, the defendant moved for a directed verdict. During oral argument on the defendant's motion, the trial court invited both parties to address the two counts that it previously had dismissed.[2] The trial court thereafter granted the defendant's motion for a directed verdict on the first two counts, but denied the motion with respect to the plaintiff's unjust enrichment count.[3] The unjust enrichment count was then submitted to the jury, but the trial court declared a mistrial when the jury was unable to reach a verdict. The case was retried before a jury in June, 2004, with the same judge presiding. Like the earlier trial, the case was limited to the plaintiff's unjust enrichment count because the trial court's earlier ruling dismissing the plaintiff's first two counts remained in effect. At the conclusion of the second trial, the jury returned a general verdict in favor of the defendant.[4] Subsequently,

[2] At the outset of oral argument on the defendant's motion for a directed verdict, the trial court stated: "Well, let's just start with the first two counts, which I technically—I'm going to ask you to comment on, even though I ruled on them. Let's just get that on the record, and disposed of, so at least from my position—my position would be that this is [a] legitimate time to consider these issues. I don't think there's anything on the evidence that would—even if they had been allowed to be part of the case that would be—that we need additional evidence on. So, let's just assume that evidence is there. What's your position on the first two counts? One, being an [express] contract, and two, being estoppel?"

[3] During the pendency of this appeal, the Appellate Court ordered the trial court to articulate the disposition of the first two counts and, if the counts had been disposed of, to articulate the legal basis for such disposition. The trial court's articulation stated that on February 27, 2004, it granted the defendant's motion for a directed verdict on counts one and two, but denied the motion on count three.

[4] "Under the general verdict rule, if a jury renders a general verdict for one party, and no party requests interrogatories, an appellate court will presume that the jury found every issue in favor of the prevailing party. . . . Thus, in a case in which the general verdict rule operates, if any ground for the verdict is proper, the verdict must stand; only if every ground is improper does the verdict fall." (Internal quotation marks omitted.) *Dowling*

the plaintiff made a motion to set aside the verdict and for a new trial, claiming that the trial court improperly had dismissed the first two counts of its complaint and incorrectly had instructed the jury with regard to the third count. The trial court denied the plaintiff's motion and rendered judgment for the defendant. This appeal followed.[5] Additional facts will be set forth as necessary.

On appeal, the plaintiff argues that the trial court improperly dismissed its breach of contract and estoppel counts because the defendant never filed any dispositive motion, such as a motion to strike or a motion for summary judgment, and neither party asked the court to determine the legal sufficiency of the plaintiff's claims. In addition, the plaintiff claims that the trial court improperly instructed the jury that, in order to prevail on its unjust enrichment claim, the plaintiff needed to prove the existence of an implied in fact contract.[6] In response, the defendant claims that the trial court properly dismissed the plaintiff's breach of contract and estoppel counts under its inherent trial

v. *Finley Associates, Inc.*, 248 Conn. 364, 371, 727 A.2d 1245 (1999). The general verdict rule will apply where there has been a "denial of a complaint and pleading of a special defense . . . ." (Internal quotation marks omitted.) Id., 372. Although the defendant alleged at least one special defense in its answer that might have applied to the plaintiff's unjust enrichment count, the trial court did not instruct the jury with regard to any of the defendant's special defenses. Thus, the jury must have reached its verdict in favor of the defendant solely on the ground that the plaintiff did not prove its case on its unjust enrichment count as instructed by the trial court. We therefore conclude that the general verdict rule is not implicated in the present case.

[5] The plaintiff appealed from the judgment of the trial court to the Appellate Court, and we thereafter transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.

[6] The plaintiff also argues that, even if the trial court employed a proper procedure by which to dismiss its first two counts, the trial court improperly determined that it could not maintain a cause of action sounding in estoppel against a municipality. Because we conclude that the trial court employed an improper procedure in dismissing this count and that the plaintiff is entitled to a new trial on this count, we do not reach the merits of the plaintiff's alternate claim.

management authority. Additionally, the defendant argues that the trial court's instruction on the unjust enrichment count was proper because this count is really a claim for quantum meruit, and in order to prevail on such a claim, the plaintiff must establish that there was an implied in fact contract. Alternatively, the defendant contends that the trial court's instruction was correct because the plaintiff had to establish that there was an express or implied in fact contract in order to prevail on its claim against a municipality.[7] We agree with the plaintiff.

## I

The first issue on appeal requires us to determine whether the trial court had the authority to determine dispositive questions of law that did not implicate the trial court's subject matter jurisdiction when neither party filed a motion or otherwise requested the court to make such a determination. We begin with the applicable standard of review. "We review case management decisions for abuse of discretion, giving [trial] courts wide latitude. . . . A party adversely affected by a [trial] court's case management decision thus bears a formidable burden in seeking reversal." (Internal quotation marks omitted.) *Krevis* v. *Bridgeport*, 262 Conn. 813, 818, 817 A.2d 628 (2003). "The case management authority is an inherent power necessarily vested in trial courts to manage their own affairs in order to

---

[7] The defendant makes a number of other arguments, interspersed throughout its brief in this court, that could be interpreted as alternate grounds to affirm the trial court's judgment. The defendant failed to file, however, a timely preliminary statement of issues as required by Practice Book § 63-4 (a) (1), indicating that it intended to present alternate grounds upon which the judgment might be affirmed. In addition, the defendant failed to provide in its brief a statement of alternate grounds to affirm the judgment as required by Practice Book § 67-5 (a). Further, the defendant failed to place these arguments under appropriate headings and into separate parts of its brief as required by Practice Book §§ 67-5 (d) and 67-4 (d). Accordingly, we decline to review these claims.

achieve the expeditious disposition of cases." Id., 819. A trial court abuses its discretion when it exercises its case management authority in a manner that is arbitrary, wilful, or without "regard to what is right and equitable under the circumstances and the law . . . ." (Internal quotation marks omitted.) Id.

We initially set forth two additional facts relevant to this issue. First, the trial court, in its memorandum of decision, concluded on the basis of the parties' pretrial briefs that the first and second counts of the plaintiff's complaint were *without legal merit*. Second, in its memorandum of decision, the trial court recognized that "[n]o motion to strike or motion for summary judgment has been filed . . . ." Thus, it is clear from the record that no motion was pending when the trial court dismissed the two counts of the complaint for legal insufficiency.

We note that due to the adversarial nature of our judicial system, "[t]he court's function is generally limited to adjudicating the issues *raised by the parties* on the proof they have presented and applying appropriate procedural sanctions on motion of a party." (Emphasis added.) F. James, G. Hazard & J. Leubsdorf, Civil Procedure (5th Ed. 2001) § 1.2, p. 4. The parties may, under our rules of practice, challenge the legal sufficiency of a claim at two points prior to the commencement of trial. First, a party may challenge the legal sufficiency of an adverse party's claim by filing a motion to strike. Practice Book § 10-39. Second, a party may move for summary judgment and request the trial court to render judgment in its favor if there is no genuine issue of fact and the moving party is entitled to judgment as a matter of law. Practice Book §§ 17-44, 17-49. In both instances, the rules of practice require a party to file a written motion to trigger the trial court's determination of a dispositive question of law. The rules of practice do not provide the trial court with authority to determine

dispositive questions of law in the absence of such a motion.

In two recent decisions, we considered the boundaries of a trial court's discretion to determine dispositive questions of law on the eve of trial and in a manner inconsistent with the procedures established in the rules of practice. First, in *Krevis* v. *Bridgeport*, supra, 262 Conn. 815, the trial court, on the day jury selection was to commence, heard oral arguments on the defendant's motion in limine to prohibit references to punitive damages and attorney's fees because of the defendant's governmental immunity as a municipality. During the course of the oral argument, the defendant argued that the plaintiff's claim was barred by the governmental immunity statute. Id., 820. The trial court granted the defendant's motion in limine because it determined that the governmental immunity statute applied. Id. The court emphasized that it was not ruling on the legal validity of the plaintiff's claim, but noted that it would be willing to expand its ruling to consider this issue. Id. After a recess, the plaintiff asked the court to rule on the legal sufficiency of its claim. Id., 821. The parties, at defense counsel's suggestion, agreed that the plaintiff's request should be treated as an oral motion for summary judgment. Id. Thereafter, the trial court rendered judgment in favor of the defendant. Id., 821–22. On appeal, we concluded that, by deciding "a dispositive question of law that the parties . . . [submitted] to the court orally, without a written motion or compliance with certain applicable provisions of the Practice Book"; id., 818; the trial court did not abuse its discretion. Id., 824. We determined that, although the plaintiff's oral motion for summary judgment violated the rules of practice, the plaintiff's counsel knowingly had waived the procedural requirements for a motion for summary judgment. Id.; cf. *Mamudovski* v. *BIC Corp.*, 78 Conn. App. 715, 721–25, 829 A.2d 47

(2003) (trial court abused its discretion when it ruled on defendant's oral motion for summary judgment in violation of procedural requirements of rules of practice because plaintiff objected to this procedure), appeal dismissed, 271 Conn. 297, 857 A.2d 328 (2004).

We also considered the scope of a trial court's discretion to consider dispositive questions of law outside the boundaries of the rules of practice in *McNamara* v. *Tournament Players Club of Connecticut, Inc.*, 270 Conn. 179, 851 A.2d 1154 (2004). In that case, the trial court at first denied the defendant's request for permission to file a motion for summary judgment after the case had been assigned for trial, but it reconsidered its decision during jury selection. Id., 186–87. After a recess to give the parties time to review the briefs previously filed, the parties argued the defendant's motion for summary judgment and the trial court made a preliminary ruling granting the defendant's motion on all but one of the counts of the plaintiff's complaint. Id., 188–91. During argument on the motion, the trial court granted the plaintiffs' request to present to the court written opposition to the defendant's motion by the next morning. Id., 190. The court reconvened the hearing the next morning, and the plaintiffs offered additional argument on the lone count on which the trial court had not issued a preliminary ruling. Id., 191. Thereafter, the trial court rendered judgment for the defendant on all counts. Id. On appeal, we rejected the plaintiffs' claim that the trial court could not sua sponte raise and decide a motion for summary judgment in violation of the rules of practice. Id., 192–93. We concluded in *McNamara* that, under our decision in *Krevis*, the trial court has discretion to decide a dispositive question of law that previously had been presented to it, without complying with the procedural provisions in the rules of practice. Id., 193. We also concluded that the trial court did not abuse its discretion on the grounds that it did not give

the plaintiffs a fair opportunity to respond to the defendant's motion. Id. First, we observed that the plaintiffs did not voice any objection to the trial court's procedure either during or after the proceedings on the motion for summary judgment. Id., 194. Second, we noted that the plaintiffs agreed to decide the legal questions in this manner. The plaintiffs' counsel stated that "if the case were destined to be subject to a directed verdict for the defendant, 'then we might as well save it and litigate the issue' on appeal." Id. Finally, we reasoned that the plaintiffs had a fair opportunity to respond to the motion because the plaintiffs' counsel stated that he was ready to argue the defendant's motion, the trial court gave the plaintiffs an opportunity to submit a written opposition to the defendant's motion, and the plaintiffs had an opportunity to challenge the trial court's preliminary rulings when the hearing reconvened the next morning. Id., 194–96.

Our decisions in *Krevis* and *McNamara* affirming the exercise of the trial court's discretion under its case management authority to determine dispositive questions of law on the eve of trial outside the procedural provisions of the rules of practice readily are distinguishable from the facts of the present case in several critical respects. First, in both of these cases, the dispositive question of law was raised in a written motion filed by one of the parties. In *McNamara*, the defendant's motion for summary judgment had been filed previously. In *Krevis*, the issue of governmental immunity was raised by the defendant's motion in limine. Second, the parties in both cases agreed that the trial court could decide the question of law despite noncompliance with the rules of practice. Finally, the trial court provided the nonmoving party, the plaintiffs in both cases, with a reasonable opportunity to respond to the dispositive motion.

In the present case, none of these important facts was present. First, as noted previously herein, the trial court in its memorandum of decision acknowledged that no motion to strike or motion for summary judgment had been filed. The pretrial briefs that led to the dismissal of two counts of the complaint were filed on the trial judge's order and not at the initiative of either party. Second, the record does not demonstrate that the plaintiff knowingly waived the applicable procedures under the rules of practice for dispositive motions.[8] Rather, the record shows that the plaintiff expressed its objection to the trial court's procedure in dismissing its first two counts by filing a notice of intent to appeal the day after the trial court issued its memorandum of decision and by filing a motion to set aside the verdict and for a new trial asserting that the trial court should not have dismissed the first two counts in the manner that it did. Finally, the record does not reveal that the plaintiff had a fair opportunity to respond to the potential dismissal of claims because it lacked notice that the trial court intended to use the parties' pretrial briefs to rule on the legal sufficiency of its claims. See *Berkovitz* v. *Home Box Office, Inc.*, 89 F.3d 24, 29 (1st Cir. 1996) (even where court may render summary judgment sua sponte, it must "first [give] the targeted party appro-

---

[8] If the defendant had moved for summary judgment, the plaintiff would have had the opportunity to file an opposing memorandum of law to the motion. See Practice Book § 17-45 (summary judgment motion must be placed on short calendar no less than fifteen days after it was filed and adverse party may, within ten days of filing motion, request that motion be placed on short calendar no less than thirty days after filing of request for extension); Practice Book § 11-10 (adverse party may file memorandum of law "on or before the time the matter appears on short calendar"). In addition, if the defendant had moved for summary judgment, the plaintiff would have had a right to argue the motion orally. Practice Book § 11-18. In the present case, the trial court required the plaintiff to submit its brief simultaneously with the defendant's, the plaintiff was given approximately four days to submit its brief to the trial court, and the plaintiff was not provided an opportunity to argue orally before the trial court dismissed the counts.

priate notice and a chance to present its evidence on the essential elements of the claim or defense"). While neither party could recall definitively during oral argument in this court whether the trial court explained its objective in having the parties submit pretrial briefs, the trial court's memorandum of decision states that it "requested the parties to brief in advance of the imminent trial the legal theories on which this case has been brought." Accordingly, it does not appear that the plaintiff had notice that the trial court might dismiss its claims based on the pretrial briefs.

We conclude that, on these facts, the trial court abused its discretion in dismissing the first two counts of the plaintiff's complaint. The trial court's broad case management authority simply does not extend so far as to permit the court to: (1) initiate the pretrial disposition of a claim based on the court's perception of its legal insufficiency; and (2) proceed to consider such disposition (a) in disregard of the procedural protections provided in our rules of practice without the agreement of counsel and (b) without notice to the parties and a reasonable opportunity for the plaintiff to oppose the disposition of its claims.

The defendant argues that the trial court had ample authority to dismiss sua sponte the plaintiff's first two counts under Practice Book §§ 15-1[9] and 16-9,[10] and under General Statutes § 52-216.[11] We disagree. Both the cited rules of practice and § 52-216 stand solely for the general proposition that, at trial, issues of law

---

[9] Practice Book § 15-1 provides in relevant part: "Where the pleadings in an action present issues both of law and of fact, the issues of law must be tried first, unless the judicial authority otherwise directs. . . ."

[10] Practice Book § 16-9 provides in relevant part: "The judicial authority shall decide all issues of law and all questions of law arising in the trial of any issue of fact . . . ."

[11] General Statutes § 52-216 provides in relevant part: "The court shall decide all issues of law and all questions of law arising in the trial of any issue of fact . . . ."

should be tried before factual issues and that the trial court must decide all issues of law. None of these sections authorizes the trial court to act as it did in the present case, determining, sua sponte, dispositive legal questions without a motion pending, without the plaintiff's waiver of applicable procedural rules of practice, and without giving the plaintiff a fair opportunity to respond.[12]

---

[12] The defendant also argues that, even if the trial court improperly dismissed the first two counts, it was harmless because the factual underpinnings of the plaintiff's three counts were the same and the trial court renewed its inquiry into the legal sufficiency of the first two counts during oral argument on the defendant's motion for a directed verdict. We disagree. Although the core of the factual allegations underlying the dismissed counts and the remaining unjust enrichment count were essentially the same, there are obvious differences in what the plaintiff needed to prove to prevail on each count. Specifically, to prevail on its estoppel claim, the plaintiff had to prove that the defendant did or said "something which [was] intended or calculated to induce [the plaintiff] to believe in the existence of certain facts and to act on that belief; and the [plaintiff], influenced thereby, must [have changed] his position or [did] some act to [its] injury which [it] otherwise would not have done." (Internal quotation marks omitted.) *John J. Brennan Construction Corp., Inc.* v. *Shelton*, 187 Conn. 695, 711, 448 A.2d 180 (1982). In addition, the plaintiff had to "show that he exercised due diligence to ascertain the truth and that he not only lacked knowledge of the true state of things but had no convenient means of acquiring that knowledge." (Internal quotation marks omitted.) Id. By contrast, to prevail on a claim of unjust enrichment the plaintiff had to prove: "(1) that the defendants were benefited, (2) that the defendants unjustly did not pay the plaintiffs for the benefits, and (3) that the failure of payment was to the plaintiffs' detriment." (Internal quotation marks omitted.) *Hartford Whalers Hockey Club* v. *Uniroyal Goodrich Tire Co.*, 231 Conn. 276, 283, 649 A.2d 518 (1994). Further, the facts that the plaintiff would have needed to prove to prevail on its dismissed breach of contract count stand in even starker contrast to the facts necessary to prove unjust enrichment because proof of an operative contract would have been incompatible with recovery on an unjust enrichment theory. *Meaney* v. *Connecticut Hospital Assn., Inc.*, 250 Conn. 500, 517, 735 A.2d 813 (1999) ("express contract between the parties precludes recognition of an implied-in-law contract governing the same subject matter" [internal quotation marks omitted]). Although the trial court gave the plaintiff an opportunity to present oral argument on the dismissed counts during the defendant's directed verdict motion, nothing in the record shows that the plaintiff had notice prior to trial that the trial court would renew its inquiry on the legal sufficiency of these counts during the trial. Moreover, once the trial court dismissed the plaintiff's first two counts prior to the trial, the plaintiff had no reason to put on its case on

## II

The plaintiff next claims that the trial court improperly instructed the jury that it had to prove that there was an implied in fact contract to prevail on its claim for unjust enrichment. We agree.

The following additional procedural history is relevant to the resolution of this issue. The plaintiff submitted a request to charge that sought to have the jury instructed as follows: "To find for the plaintiff under a theory of unjust enrichment or quantum meruit, you must find that the plaintiff has provided services to the defendant, that the defendant benefited from these services, that the defendant unjustly did not pay for that benefit and that the defendant's failure to pay was to the plaintiff's detriment." The trial court did not adopt the plaintiff's requested jury charge, but instead instructed the jury as follows: "This is a case alleging a breach of implied contract. The existence of an implied contract is a question of fact to be determined by you on the basis of all the evidence. To form a valid and binding contract in Connecticut, there must be a mutual understanding of the terms that are definite and certain between the parties.

"The contract terms may be expressed in words, or may be inferred or implied from the circumstances. When a contract is inferred or implied from the circumstances, it is called an implied contract. A true implied contract is one which can be inferred from the conduct of the parties although not expressed in words.

"There may be an implied contract for services here, as I told you, between the parties; so I will explain to you as clearly as I can what the plaintiff must have proved in order to recover on that ground. In the first

these counts. We reject the defendant's claim that the plaintiff was not harmed by the trial court's dismissal of the first two counts of its complaint.

place, the plaintiff must prove that it rendered the services in the expectation that it would be paid by the [defendant]. The services must have been more than a mere gratuitous accommodation, more than things done with the hope that some time in the future the defendant would reciprocate. The services must have been rendered with the intention in the mind of the plaintiff they were to be paid for by the defendant in recognition of a legal obligation, thus creating a debt. . . .

"In order for the plaintiff to recover on an implied contract it must prove that it rendered the services on the expectation that the [defendant] would pay for them, and it must also prove to you by a fair preponderance of the evidence one of these situations: first, that the [defendant] intended to pay for them; or, second, that the [defendant] accepted them knowing that the plaintiff expected to be paid for them, or under circumstances that a reasonable person in the situation would have known of that expectation; or third, that the words or conduct of the [defendant] were such that a reasonable person in the situation of the plaintiff would have been led to believe that the [defendant] expected to pay for the services."

"Our analysis begins with a well established standard of review. When reviewing [a] challenged jury instruction . . . we must adhere to the well settled rule that a charge to the jury is to be considered in its entirety, read as a whole, and judged by its total effect rather than by its individual component parts. . . . [T]he test of a court's charge is not whether it is as accurate upon legal principles as the opinions of a court of last resort but whether it fairly presents the case to the jury in such a way that injustice is not done to either party under the established rules of law. . . . As long as [the instructions] are correct in law, adapted to the issues and sufficient for the guidance of the jury . . . we will

not view the instructions as improper." (Internal quotation marks omitted.) *Godwin* v. *Danbury Eye Physicians & Surgeons, P.C.*, 254 Conn. 131, 142–43, 757 A.2d 516 (2000).

We conclude that the trial court's instruction in the present case was improper because the trial court failed to instruct the jury on the correct elements of the plaintiff's claim for unjust enrichment, and, instead, the court instructed the jury with regard to an implied in fact contract. "Unjust enrichment applies wherever justice requires compensation to be given for property or services rendered under a contract, and no remedy is available by an action on the contract. . . . A right of recovery under the doctrine of unjust enrichment is essentially equitable, its basis being that in a given situation it is contrary to equity and good conscience for one to retain a benefit which has come to him at the expense of another. . . . With no other test than what, under a given set of circumstances, is just or unjust, equitable or inequitable, conscionable or unconscionable, it becomes necessary in any case where the benefit of the doctrine is claimed, to examine the circumstances and the conduct of the parties and apply this standard. . . . Unjust enrichment is, consistent with the principles of equity, a broad and flexible remedy. . . . Plaintiffs seeking recovery for unjust enrichment must prove (1) that the defendants were benefited, (2) that the defendants unjustly did not pay the plaintiffs for the benefits, and (3) that the failure of payment was to the plaintiffs' detriment." (Citations omitted; internal quotation marks omitted.) *Hartford Whalers Hockey Club* v. *Uniroyal Goodrich Tire Co.*, 231 Conn. 276, 282–83, 649 A.2d 518 (1994).

The term "implied contract," which the trial court used in its instruction to the jury, often leads to confusion because it can refer to an implied in fact contract or to an implied in law contract. An implied in fact

contract is the same as an express contract, except that assent is not expressed in words, but is implied from the conduct of the parties. See *Janusauskas* v. *Fichman*, 264 Conn. 796, 804, 826 A.2d 1066 (2003). On the other hand, an implied in law contract is "not a contract, but an obligation which the law creates out of the circumstances present, even though a party did not assume the obligation . . . . It is based on equitable principles to operate whenever justice requires compensation to be made." (Internal quotation marks omitted.) *Yale Diagnostic Radiology* v. *Estate of Fountain*, 267 Conn. 351, 359, 838 A.2d 179 (2004). An implied in law contract may arise due to one party being unjustly enriched to the detriment of the other party. See id., 360. Accordingly, an implied in law contract is another name for a claim for unjust enrichment. See *Meaney* v. *Connecticut Hospital Assn., Inc.*, 250 Conn. 500, 511, 735 A.2d 813 (1999) (observing that claim for unjust enrichment is sometimes denominated implied in law claim or quasi-contract claim); see also 66 Am. Jur. 2d 604, Restitution and Implied Contracts § 8 (2001) ("[u]njust enrichment is also referred to as . . . a contract implied in law").

In the present case, the trial court's instruction set forth the legal test for an implied in fact contract because it instructed the jury that the plaintiff must prove that it rendered services with the reasonable expectation that the defendant would pay for the services and that the defendant accepted those services in a manner that reasonably would lead the plaintiff to believe that the defendant intended to pay for the services. See *Janusauskas* v. *Fichman*, supra, 264 Conn. 804–805 (implied in fact contract "arises where a plaintiff, without being requested to do so, renders services under circumstances indicating that he expects to be paid therefor, and the defendant, knowing such circumstances, avails himself of the benefit of those

services"). Despite the plaintiff's proper request to charge, the trial court in the present case failed to instruct the jury on any of the elements that the plaintiff was required to prove to prevail on its claim of unjust enrichment. Thus, the trial court's instruction was not correct legally.

We further conclude that the trial court's improper instruction was harmful. "An instructional impropriety is harmful if it is likely that it affected the verdict." *Scanlon* v. *Connecticut Light & Power Co.*, 258 Conn. 436, 448, 782 A.2d 87 (2001). The trial court's instruction on a legal theory that the plaintiff did not allege and that does not share any of the distinct elements of the plaintiff's alleged unjust enrichment claim likely affected the jury's verdict, which was adverse to the plaintiff. The plaintiff therefore is entitled to a new trial on this count.

The defendant argues that the trial court's instructions were proper because, based on the evidence adduced at trial, the plaintiff's claim was more accurately a claim of quantum meruit and the trial court's instruction properly reflected the legal test for such a claim. We disagree. First, the defendant cites no legal authority, and we are aware of none, supporting the contention that the trial court properly could have instructed the jury on a legal theory that the plaintiff did not plead.[13] Further, even if the plaintiff sought to

[13] While a trial court "has a duty to submit to the jury no issue upon which the evidence would not reasonably support a finding"; (internal quotation marks omitted) *Lin* v. *National Railroad Passenger Corp.*, 277 Conn. 1, 6, 889 A.2d 798 (2006); the trial court should "submit to the jury the *issues as outlined by the pleadings* and as reasonably supported by the evidence." (Emphasis added; internal quotation marks omitted.) *DiStefano* v. *Milardo*, 276 Conn. 416, 421, 886 A.2d 415 (2005); see also *Faulkner* v. *Reid*, 176 Conn. 280, 281, 407 A.2d 958 (1978) (trial court improperly instructed jury on contributory negligence where pleadings failed to allege special defense of contributory negligence); *Drummond* v. *Hussey*, 24 Conn. App. 247, 248, 588 A.2d 223 (1991) (trial court properly did not instruct on contract and quantum meruit theories because they were not raised in pleadings). In the present case, the plaintiff's lone remaining count that was alleged in the

recover under the theory of quantum meruit, the trial court's instruction would have been incorrect in law because quantum meruit is an equitable theory of recovery that "does not depend upon the existence of a contract, either express or implied in fact." *Gagne* v. *Vaccaro,* 255 Conn. 390, 401, 766 A.2d 416 (2001), on appeal after remand, 80 Conn. App. 436, 835 A.2d 491 (2003), cert. denied, 268 Conn. 920, 846 A.2d 881 (2004).

The defendant also argues that the trial court's instructions are supported by this court's statement in *Windham Community Memorial Hospital* v. *Willimantic,* 166 Conn. 113, 348 A.2d 651 (1974), that recovery against a municipality is limited to when a law authorizes such a recovery or under a claim of breach of contract. We disagree. In that case, this court stated that "[o]ne who demands payment of a claim against a municipality must show some law authorizing it, or that it arises from some contract, express or implied, which is sanctioned by law." Id., 122–23. The defendant misconstrues this statement as a prohibition on private parties recovering against a municipality under an unjust enrichment theory. Indeed, this court in *Windham Community Memorial Hospital* went on to state "that a municipal corporation may become liable on an implied contract within the scope of its corporate powers, where the contract is deduced by inference from corporate acts or *is a contract implied in law.*" (Emphasis added.) Id., 123; see also *Cecio Bros., Inc.* v. *Greenwich,* 156 Conn. 561, 564–69, 244 A.2d 404 (1968) (considering claim of unjust enrichment against municipality, but ultimately rejecting claim under circumstances of that case). The only limitation to recovery under this theory that is peculiar to a municipality is that this implied in law contract must be within the

complaint was unjust enrichment. Accordingly, the plaintiff was entitled, as long as its claim was reasonably supported by the evidence, to have the trial court properly submit its unjust enrichment claim to the jury.

municipality's "corporate powers; it must appear that there is statutory authority in the city to contract for the particular services."[14] *Windham Community Memorial Hospital* v. *Willimantic*, supra, 123. This rule is consistent with that of other jurisdictions, which allow private parties to recover under a theory of unjust enrichment against municipalities, except where such an implied in law contract would be ultra vires. See 10A E. McQuillin, Municipal Corporations (3d Ed. Rev. 1999) § 29.112, pp. 111–12 ("[t]here is considerable authority . . . to support the rule that a recovery may be allowed [where contract is otherwise invalid for failure to follow procedures set forth in statute or charter] . . . upon the theory that it is not justice, where a contract is entered into between a municipality and another, in good faith, and the corporation has received benefits, to permit the municipality to retain the benefits without paying their reasonable value"; but such recovery may be conditioned on whether contract was within corporate powers); 2 S. Stevenson, Antieau on Local Government Law (2d Ed. 2005) §§ 32.02 [1] and [2], 32.03 [1] (noting that some states recognize claims of unjust enrichment

---

[14] The plaintiff's ability to prevail on its unjust enrichment claim nevertheless may be limited, even if it was within the municipality's powers to contract for the services that the plaintiff conferred upon it. As we have stated repeatedly, the trier of fact must examine the particular circumstances and the conduct of the parties to determine if the defendant was unjustly enriched to the plaintiff's detriment. See, e.g., *Cecio Bros., Inc.* v. *Greenwich*, supra, 156 Conn. 564–65. Where the defendant is a municipality, its unique nature must be taken into account when examining the circumstances of the case. See id., 568–69 (considering, in concluding that defendant municipality was not unjustly enriched, fact that plaintiff's failure to give timely notice of additional incurred costs deprived municipality of opportunity to keep project within limits of appropriated public funds); see also *A.F.A.B., Inc.* v. *Old Orchard Beach*, 639 A.2d 103, 106 (Me. 1994) (rejecting per se bar on recovering from defendant municipality on unjust enrichment theory, but recognizing that "fact that the defendant is a municipality, and therefore the taxpayers will bear the burden of compensating the plaintiff should recovery be allowed, is one of the circumstances appropriately to be considered in determining whether the municipality should be accountable for a claim of unjust enrichment").

against municipality, but provider of goods or services under contract that is ultra vires cannot recover in quasi-contract). Accordingly, we conclude that the trial court's instruction on a breach of implied in fact contract was not warranted on the grounds that unjust enrichment cannot be established against a municipality.

The judgment is reversed and the case is remanded to the trial court for a new trial.

In this opinion the other justices concurred.