JOSEPH R. KREVIS ET AL. *v.* CITY OF BRIDGEPORT
(SC 16624)

Borden, Norcott, Palmer, Vertefeuille and Zarella, Js.

Argued December 2, 2002—officially released March 25, 2003

*John R. Mitola,* associate city attorney, for the appellant (defendant).

*George C. Springer, Jr.,* for the appellee (named plaintiff).

*Opinion*

VERTEFEUILLE, J. In this certified appeal, the defendant, the city of Bridgeport, appeals from the Appellate Court's reversal of the summary judgments rendered by the trial court in favor of the defendant based on the parties' submission to the court of a dispositive question of law. The sole issue in this appeal is whether the Appellate Court correctly concluded that it was procedurally improper for the trial court to consider and decide what the defendant termed an "oral motion for summary judgment" because of the defendant's failure to comply with the procedural requirements for a motion for summary judgment as set forth by the rules of practice. We conclude that the plaintiff, Joseph R. Krevis,[1] waived his right to compel compliance with the rules of practice, and, therefore, that the trial court properly considered the question of law submitted by the parties. Accordingly, we reverse the judgment of the Appellate Court.

The Appellate Court opinion sets forth the following relevant facts and procedural history. "The plaintiff, a

---

[1] The plaintiff's wife, Jean M. Krevis, originally was a plaintiff in this action, but her claims against the defendant were withdrawn before trial. Accordingly, references herein to the plaintiff are to Joseph R. Krevis.

former employee of the defendant, brought two separate actions against the defendant. In one complaint, the first count alleged invasion of privacy in connection with the alleged disclosure of medical and personnel file data to agents of the Internal Revenue Service. The second and third counts alleged intentional, wanton or reckless conduct on the part of the defendant in disclosing the same data. The fourth count alleged negligence. The fifth count alleged negligent infliction of emotional distress as a result of the disclosure. The court later consolidated that five count complaint with a second complaint [filed by the plaintiff] alleging disclosure of medical and personnel information to Total Employee Case, Inc., a corporation charged by the defendant with administering certain medical claims, and to a witness for the defendant who testified about the records in a hearing before the workers' compensation commission in which the plaintiff sought heart and hypertension benefits.

"On the day jury selection was to commence, the court heard a motion in limine submitted by the defendant to prevent references to punitive damages and attorney's fees during the trial. In the motion, the defendant discussed the nature of the governmental immunity of municipalities.[2] The court granted the motion in limine, barring [any] reference to punitive damages or attorney's fees.

"Immediately thereafter, counsel for the plaintiff questioned the nature of the ruling, stating that 'my impression is [that the court is] making a ruling based upon the governmental immunity statute.' The court replied that '[the governmental immunity statute] applies—if you want me to expand that to the cause of action, I can very easily do that.' Counsel for the

---

[2] The defendant did not assert governmental immunity as a special defense to the second action brought by the plaintiff.

plaintiff responded, 'I'm not exactly sure how I should take that,' to which the court replied, '[y]ou better take it very carefully, counselor . . . because if I do go into it, it may jeopardize this entire action.' Counsel for the plaintiff then asked for a recess to confer with his client.

"After the recess, counsel for the plaintiff stated, 'I will say for the record that I certainly do not want to go through the effort of a three, four, possibly five day trial only, at the end of the day, to have my case dismissed. If the court at this point is prepared to make a ruling on the applicability of the governmental immunity statute as to the claims in this case, we will accept the judgment of the court and take appropriate action.' The court acknowledged the irregularity of a summary judgment ruling under the circumstances.

"Counsel for the defendant interjected that 'an oral motion for summary judgment' might be an appropriate way to resolve questions on the application of governmental immunity.[3] The court, after further discussion with counsel for the plaintiff over whether defense counsel had exceeded the scope of the motion in limine in his discussion of applicable law, found governmental immunity applicable to all counts and dismissed the actions. The plaintiff appealed from the judgments." *Krevis* v. *Bridgeport*, 64 Conn. App. 176, 177–79, 779 A.2d 838 (2001).

During oral argument in the Appellate Court, members of the court raised a question regarding the propriety of the trial court granting an oral motion for summary judgment. Id., 179. The parties thereafter filed supplemental briefs addressing whether an oral motion for summary judgment was proper. Id.

The Appellate Court reversed the judgments of the trial court,[4] concluding that the trial court was without

---

[3] The defendant never filed a written motion for summary judgment.

[4] The Appellate Court did not address the merits of the issues raised by the plaintiff on appeal, namely, whether "the trial court improperly (1)

authority to render summary judgment because the motion was not in writing and was not accompanied by a memorandum and supporting documents, as required by Practice Book §§ 11-1,[5] 11-10,[6] 17-44[7] and 17-45.[8] Id., 183. We thereafter granted the defendant's

rendered judgments on the negligence counts asserted in the consolidated cases on the basis of [General Statutes] § 7-465, (2) dismissed the cases on the basis of a defense contained in § 7-465 when such defense had not been pleaded by the defendant . . . (3) concluded that no private right of action exists for violation of the Freedom of Information Act, General Statutes § 1-200 et seq."; *Krevis* v. *Bridgeport*, supra, 64 Conn. App. 177; and (4) whether the trial court improperly applied General Statutes § 52-557n in concluding that the plaintiff could not bring an action directly against the defendant.

[5] Practice Book § 11-1 provides: "Every motion, request, application or objection directed to pleading or procedure, unless relating to procedure in the course of a trial, shall be in writing and shall, except in the case of a request, have annexed to it a proper order, and a proper order of notice and citation, if one or both are necessary. Such motion, request, application or objection shall be served on all parties as provided in Sections 10-12 through 10-17 and, when filed, the fact of such service shall be endorsed thereon."

[6] Practice Book § 11-10 provides: "A memorandum of law briefly outlining the claims of law and authority pertinent thereto shall be filed and served by the movant with the following motions and requests: (1) motions regarding parties filed pursuant to Sections 9-18 through 9-22 and motions to implead a third party-defendant filed pursuant to Section 10-11; (2) motions to dismiss except those filed pursuant to Section 14-3; (3) motions to strike; (4) motions to set aside judgment filed pursuant to Section 17-4; and (5) motions for summary judgment. Memoranda of law may be filed by other parties on or before the time the matter appears on the short calendar."

[7] Practice Book § 17-44 provides: "In any action, except administrative appeals which are not enumerated in Section 14-7, any party may move for a summary judgment at any time, except that the party must obtain the judicial authority's permission to file a motion for summary judgment after the case has been assigned for trial. These rules shall be applicable to counterclaims and cross complaints, so that any party may move for summary judgment upon any counterclaim or cross complaint as if it were an independent action. The pendency of a motion for summary judgment shall delay trial only at the discretion of the trial judge."

[8] Practice Book § 17-45 provides: "A motion for summary judgment shall be supported by such documents as may be appropriate, including but not limited to affidavits, certified transcripts of testimony under oath, disclosures, written admissions and the like. The motion shall be placed on the short calendar to be held not less than fifteen days following the filing of the motion and the supporting materials, unless the judicial authority

petition for certification to appeal, limited to the following issue: "Did the Appellate Court properly conclude that it was procedurally improper for the trial court to have rendered summary judgment?" *Krevis* v. *Bridgeport*, 258 Conn. 939, 786 A.2d 426 (2001). This appeal followed.

The defendant claims that the Appellate Court improperly ruled that the trial court lacked the authority to decide the question of law submitted by the parties because of the defendant's failure to comply with the Practice Book provisions. The defendant further contends that the trial court acted properly because the plaintiff waived the procedural requirements of the rules of practice relating to motions for summary judgment. We agree with the defendant.[9]

The certified issue implicates the case management authority of the trial court in that it requires us to determine whether a trial court has the authority, as a trial is about to begin, to decide a dispositive question of law that the parties to the case submit to the court orally, without a written motion or compliance with certain applicable provisions of the Practice Book. We begin by setting forth the standard of review that will govern our analysis of this issue. "We review case management decisions for abuse of discretion, giving [trial] courts wide latitude. . . . A party adversely affected by a [trial] court's case management decision thus bears a formidable burden in seeking reversal." (Citation omitted; internal quotation marks omitted.) *Santiago-*

otherwise directs. The adverse party shall at least five days before the date the motion is to be considered on the short calendar file opposing affidavits and other available documentary evidence. Affidavits, and other documentary proof not already a part of the file, shall be filed and served as are pleadings."

[9] The defendant also requests that if we reverse the Appellate Court judgment, we should retain jurisdiction to decide the merits of the other issues that were raised in the appeal to that court. We decline to do so.

*Ramos* v. *Centennial P.R. Wireless Corp.*, 217 F.3d 46, 58 (1st Cir. 2000). A trial court has the authority to manage cases before it as is necessary. See *In re Mongillo*, 190 Conn. 686, 690–91, 461 A.2d 1387 (1983), overruled in part on other grounds, *State* v. *Salmon*, 250 Conn. 147, 155, 735 A.2d 333 (1999). Deference is afforded to the trial court in making case management decisions because it is in a much better position to determine the effect that a particular procedure will have on both parties. *Reed* v. *Philadelphia, Bethlehem & New England R.R. Co.*, 939 F.2d 128, 133 (3d Cir. 1991). The case management authority is an inherent power necessarily vested in trial courts to manage their own affairs in order to achieve the expeditious disposition of cases. *In re Mongillo*, supra, 690–91. The ability of trial judges to manage cases is essential to judicial economy and justice. Id., 691.

We will not disturb a trial court's decision regarding case management unless after carefully examining the factual circumstances of the case, we determine that there was an abuse of discretion. See *Elgabri* v. *Lekas*, 964 F.2d 1255, 1260 (1st Cir. 1992). Abuse is not present if discretion "is not exercised arbitrarily or wilfully, but with regard to what is right and equitable under the circumstances and the law, and [it is] directed by the reason and conscience of the judge to a just result. . . . And [sound discretion] requires a knowledge and understanding of the material circumstances surrounding the matter . . . ." (Internal quotation marks omitted.) *State* v. *Williams*, 195 Conn. 1, 8, 485 A.2d 570 (1985).

We must decide, therefore, whether the trial court abused its discretion when it decided, under the circumstances of this case, to resolve the issue of whether governmental immunity barred the plaintiff's claims. The following additional facts are necessary to our resolution of this question. The defendant's motion in limine

asked that the plaintiff be precluded from making any reference to punitive damages and attorney's fees during jury selection and trial. The basis for the motion was that the defendant, as a municipality, could not be held liable for punitive damages or attorney's fees. During oral argument on the motion, the defendant also argued that the plaintiff's claims were barred by General Statutes § 7-465, the governmental immunity statute. The plaintiff objected to the motion, in part on the basis that the defendant was attacking his cause of action on the legal ground of governmental immunity, rather than raising an evidentiary issue.

After hearing argument from both parties, the trial court granted the motion in limine, and ordered that neither party refer to the claims for punitive damages and attorney's fees. The trial court confirmed the understanding of the plaintiff's counsel that the court's ruling was based in part on the governmental immunity statute, but emphasized that it was not ruling at that time as to the substantive validity of the plaintiff's causes of action.[10] The trial court did express a willingness, however, to expand its ruling concerning the governmental immunity statute to the plaintiff's causes of action.[11] The plaintiff's counsel then requested and was

---

[10] The trial court stated: "I've restricted myself to the claims . . . that were raised in the motion in limine, and I have not made any decision whatsoever on the validity, legal validity of any of the claims or causes of action that are alleged in this case as of yet."

[11] The following colloquy occurred between the plaintiff's counsel and the court:

"[Plaintiff's Counsel]: All right. So as I understand it then your ruling is that the governmental immunity statute applies in this case and that as a result of that, that it applies in this case . . . I believe there's two portions—

"The Court: Well, I'm saying that it applies—if you want me to expand that to the cause of action, I can very easily do that. I don't know that you want me to do that at this point. But if you do, I'll be happy to go into it.

"[Plaintiff's Counsel]: Your Honor, I'm not exactly sure how I should take that but—but quite frankly—

"The Court: You better take it very carefully, counselor—

"[Plaintiff's Counsel]: Well, frankly—

"The Court:—because if I do go into it, it may jeopardize this entire action."

granted a recess in order to consult with his client and determine whether to ask the court to rule on the causes of action.

When court reconvened, the plaintiff's counsel requested that the court rule on the issue of law before it, that is, whether the plaintiff's causes of action were barred by § 7-465. The plaintiff's counsel expressly stated that he wanted a ruling on the governmental immunity issue.[12] The defendant's counsel then suggested that the oral presentation by the plaintiff's counsel to the court regarding this question of law should be termed an "oral motion for summary judgment," stating that a motion for a directed verdict and a motion for summary judgment were "basically the same . . . ." The plaintiff's counsel did not object to these statements, but engaged in a colloquy with the court that demonstrated his familiarity with the applicable rules of practice concerning motions to strike and motions for summary judgment. At the end of the colloquy, the plaintiff's counsel, reasserted his request for a ruling on the dispositive issue of law.[13] The trial court then

---

[12] The plaintiff's counsel stated the following: "I will say for the record that I certainly do not want to go through the effort of a three, four, possibly five day trial only, at the end of the day, to have my case dismissed. If the court at this point is prepared to make a ruling on the applicability of the governmental immunity statute as to the claims in this case, we will accept the judgment of the court and take appropriate action."

[13] The following colloquy occurred between the plaintiff's counsel and the court:

"[Plaintiff's Counsel]: . . . When the motion in limine was presented, and as you correctly observed, there are a number of legal points in there, including this one, with respect to the attachment or applicability of governmental immunity and I objected very strongly to that and you asked me what legal authority I had. I couldn't give you cases. Now, I don't think there's a person in this courtroom who doesn't know and in Connecticut if you make a motion to strike, if you don't bring a motion to strike when you file your answer you're precluded from doing it after. Then you can bring a motion for summary judgment, and if you do that you've got to get the court's permission after the case has been claimed for trial. That's the Practice Book. I don't have the cases for that.

"The Court: Well, they didn't—they didn't do that.

rendered judgment for the defendant in the actions,

"[Plaintiff's Counsel]: No. What they—

"The Court:—They didn't request it. You requested that I rule on this.

"[Plaintiff's Counsel]: No, they back-doored it, Your Honor, and that's the reason why I got so angry this morning.

"The Court: Well, you didn't have to do that. I indicated to you that my ruling was restricted to the issue of whether or not the mention of punitive damages could be made before the jury during the course of the trial by anybody, and I restricted my ruling to that based on the rationale that I set forth on the record.

"Now, I heard counsel for the defendant raise certain immunity issues and I called him on that and told him that that was extra over and above and he agreed but went on and did it anyway, and I told you when you raised the issue that I was not ruling on that issue at that time, that I was ruling only on the issue of . . . with regard to the motion in limine, which I did. You went on to invite the court to rule on a broader level, and after you had a discussion with your client, I'm prepared to do that and—

"[Plaintiff's Counsel]: Your Honor, I did—

"The Court:—that is not a matter out of—I don't think—you're the one who says you don't want to put on evidence. You want to have a ruling in advance. I'm willing to do that. But if you want to put on evidence, you can do that too.

"[Plaintiff's Counsel]: Oh no, no, no, no, no. I didn't come here, judge, to walk out of this courthouse. That's not what I said and I—you know, your ruling was based upon the governmental immunity statute. That's what it's based on. That's what it's based on. That was an issue that they briefed wholly, separate and apart from the motion in limine. That was an appeal in effect on a motion for summary judgment to say that we can't get—

"The Court: Well—

"[Plaintiff's Counsel]:—we're not entitled to compensatory damages. That's my view of it. People may disagree with me. That's my view of it, judge. That's why I'm saying at this stage of the game if you're going to base—

"The Court: Well, excuse me, counselor. It's—the court is permitted to entertain a motion for summary judgment.

"[Plaintiff's Counsel]: That's correct.

"The Court: And it's up to the court to do that if it wishes to. Now, if your claim is that they have impermissibly filed a motion for summary judgment in the guise of a motion in limine, well, that—what difference does it make—

"[Plaintiff's Counsel]: Judge—

"The Court:—if we get to the same result?

"[Plaintiff's Counsel]: Yeah, that's the effect of your ruling. The effect of your ruling is to—is a motion for summary judgment. That's what I'm getting at—

"The Court: Mm-mm.

"[Plaintiff's Counsel]:—because you're relying upon the governmental

citing § 7-465 and referring to his decision as "the invited decision in disposing of this case."

This court previously has recognized a party's ability to waive rights authorized by the provisions of the Practice Book. See, e.g., *State* v. *Patterson*, 230 Conn. 385, 390, 645 A.2d 535 (1994) (holding that criminal defendant can waive right to have judge present during voir dire as required by Practice Book § 848, now § 42-12), on appeal after remand, 236 Conn. 561, 674 A.2d 416 (1996); *State* v. *Simino*, 200 Conn. 113, 125–33, 509 A.2d 1039 (1986) (holding that criminal defendant can waive right to be present in court during jury charge in contravention of Practice Book § 968, now § 44-8).

"To determine the presence of waiver, there must be evidence of intelligent and intentional action by the petitioner of the right claimed to be waived." *McClain* v. *Manson*, 183 Conn. 418, 430, 439 A.2d 430 (1981). It must be shown that the party understood its rights and voluntarily relinquished them anyway. *United States* v. *Carr*, 445 F. Sup. 1383, 1390 (D. Conn. 1978). Each case should be considered upon the particular facts and circumstances surrounding that case, including the background, experience and conduct of the party that is waiving its rights. See *United States* v. *Duty*, 447 F.2d 449, 450 (2d Cir. 1971).

In the present case, the colloquy between the plaintiff's counsel and the court reveals that the plaintiff's counsel was well aware of the procedural requirements for a motion for summary judgment. Nevertheless, after

immunity statute and, as I said before, the reason why I asked for articulation, I was not prepared to respond to that, but the court has made its ruling and I'm not going to go back and beat a dead horse. What I'm saying at this stage if the court is satisfied, which it appears to be, that that portion of the statute or that that statute attaches to this case, then on the record before it, you've got the pleadings, I think it's incredibly unfair for us to go through a three, four day trial, judge, only at the end of the day based upon the pleadings . . . ."

having conferred with his client, the plaintiff's counsel asked the court to rule immediately on the question of law in order to avoid presenting evidence for several days, after which the court might grant a motion for a directed verdict. We are satisfied on this record that the plaintiff's counsel knowingly waived compliance with the procedural provisions of the Practice Book relating to motions for summary judgment.[14]

We conclude that, given this waiver by the plaintiff's counsel, the trial court did not abuse its discretion in deciding to resolve the question of law submitted to it by the parties. Deciding the question at that time, rather than awaiting the inevitable motion for a directed verdict after the presentation of evidence for several days, preserved scarce judicial resources without infringing on the rights of either party. See *In re Mongillo*, supra, 190 Conn. 690–93. Although another trial judge reasonably might have refused to decide the governmental immunity issue because of the defendant's failure to follow the procedures detailed in the rules of practice, we cannot say that this trial judge abused his discretion in proceeding as he did, when all of the concerned parties desired an expeditious ruling in order to avoid the possibly futile presentation of the plaintiff's case. The rules of practice are designed to be liberally construed "to facilitate business and advance justice"; they are not to be strictly construed when strict construction will result in pointless delay. Practice Book § 1-8. We will not lightly disturb the trial court's decision for, after all, the trial court was in the best position to know its intentions with regard to the motion for a directed

---

[14] At oral argument in this court, the plaintiff's counsel nominally argued for affirmance of the Appellate Court's judgment, which rested on procedural grounds. When questioned, however, he frankly admitted that he would prefer a ruling on the merits of the issues that were presented to the Appellate Court on appeal, and that he had sought such a ruling on the merits in the Appellate Court also, without contesting the procedural posture of the trial court's ruling.

verdict that was bound to be presented at the close of the plaintiff's case.

The judgment of the Appellate Court is reversed and the case is remanded to that court for a determination of the merits of the plaintiff's appeal.

In this opinion the other justices concurred.