# DANIELA KOEPPEN ROSENFELD *v.* ROGER ROSENFELD
## (AC 29063)

Bishop, Beach and Peters, Js.

Argued April 16—officially released July 7, 2009

*Samuel V. Schoonmaker IV,* for the appellant (defendant).

*Barbara M. Schellenberg,* with whom were *Neil R. Marcus* and *Rachel A. Pencu,* for the appellee (plaintiff).

*Opinion*

PETERS, J. Trial courts have inherent power to manage their caseloads in order to achieve the expeditious disposition of cases. See *Krevis* v. *Bridgeport,* 262 Conn. 813, 819, 817 A.2d 628 (2003); *In re Mongillo,* 190 Conn. 686, 691, 461 A.2d 1387 (1983), overruled in part on other grounds by *State* v. *Salmon,* 250 Conn. 147, 154–55, 735 A.2d 333 (1999). Accordingly, a defendant's constitutional right to be represented by counsel of his choice does not grant a defendant an unlimited opportunity to obtain alternate counsel on the eve of trial. See *State* v. *Robinson,* 227 Conn. 711, 725, 631 A.2d 288 (1993). The dispositive issue in this marital dissolution case is whether these principles govern the defendant's appeal from the trial court's denial of his last minute motion for a continuance to enable him to come to this state from Antigua to act as his own counsel in substitution for prior counsel of his choice. We affirm the judgment of the trial court.

In a complaint originally filed on June 6, 2005, and amended on November 17, 2005, the plaintiff, Daniela Koeppen Rosenfeld, alleged that her marriage to the defendant, Roger Rosenfeld, had broken down irretrievably and sought dissolution of the marriage, custody

and support of their two minor children, alimony, distribution of their assets and counsel fees. Because the parties previously had agreed that their marriage had broken down and that they should share the custody of their children, the substantive issues that the court addressed related only to the distribution of the parties' assets. After an evidentiary hearing, the court rendered judgment dissolving the parties' marriage and requiring the defendant to pay alimony and child support, to transfer to the plaintiff designated real property in Weston and Antigua and to pay $30,000 of the plaintiff's counsel fees.[1] The defendant has appealed.

The centerpiece of the defendant's appeal is his claim that the court violated his constitutional right to counsel

[1] The trial court made the following findings of fact. Since the plaintiff's marriage to the defendant in 1992, she has not been employed full-time. She has no income other than the pendente lite support provided by the defendant. As a result of an inheritance from her father, the plaintiff has approximately $15,000 in a savings account and $1642 in stocks. Her only other assets are jewelry worth approximately $5000 and a 2001 Kawasaki motor bike.

The defendant is an attorney licensed to practice law in Connecticut, who resides in Antigua and is engaged in real estate development there. He is the beneficiary of four trusts established by his deceased parents that annually pay him substantial income that, in recent years, has fluctuated from $382,305 to $1,350,325. The trusts also pay him an annual management fee of $100,000.

The defendant holds title to the marital home located on Samuelson Road in Weston, where the plaintiff currently resides, and to an adjacent vacant lot. The present fair market value of the two pieces of property is $1,150,000 and $100,000, respectively. The defendant also owns a single-family residence in Antigua where the parties resided after their marriage until 2000, when they moved to the house in Weston. This property currently has a fair market value of $872,104.

The defendant purchased three additional properties in Antigua after the marriage. The plaintiff contributed $80,000 toward these purchases. Together, they currently have a fair market value of more than $2,400,000. The defendant also owns a sailboat, for which he paid $120,000 in 2000, and at least five motor vehicles. Because of the defendant's failure to file a sworn financial affidavit at trial in violation of his obligation to do so; Practice Book § 25-30 (a); the court was unable to determine his net income or his net equity.

of his choice by rejecting his motion to represent himself. It is undisputed that this motion was filed, unsigned, on the eve of the scheduled commencement of the trial of his dissolution case on June 11, 2007, at a time when the defendant was in Antigua. Although the date of the trial previously had been continued for one month at the defendant's request, one day before filing his motion to appear pro se, the defendant requested a further continuance of the trial until "sometime after September 1, 2007." The court questioned the defendant's motives for filing these motions and denied them both. The defendant's appeal challenges the court's rulings.

The procedural history of the defendant's motions is undisputed. On June 11, 2007, the opening day of the trial of the dissolution action, the defendant's counsel, Melvin Bloomenthal, asked the court to grant a motion that he had filed a few days earlier to withdraw his appearance for the defendant. Bloomenthal informed the court that, that morning, he had received a copy of a fax the defendant had filed with the court for an in lieu of appearance[2] for the defendant to represent himself pro se. In response to the court's question, Bloomenthal acknowledged that, to the best of his

---

[2] Practice Book § 3-8 provides: "Whenever an attorney files an appearance for a party, or the party files an appearance for himself or herself, and there is already an appearance of an attorney or party on file for that party, the attorney or party filing the new appearance shall state thereon whether such appearance is in place of or in addition to the appearance or appearances already on file. If the new appearance is stated to be in place of any appearance or appearances on file, the party or attorney filing that new appearance shall serve, in accordance with Sections 10-12 through 10-17, a copy of that new appearance on any attorney or party whose appearance is to be replaced by the new appearance. Unless a written objection is filed within ten days after the filing of an in-lieu-of appearance, the appearance or appearances to be replaced by the new appearance shall be deemed to have been withdrawn and the clerk shall make appropriate entries for such purpose on the file and docket. The provisions of this section regarding parties filing appearances for themselves does not apply to criminal cases."

knowledge, the defendant was not then in this country. Bloomenthal also noted that, the previous day, the defendant had faxed a revised motion for a continuance to the court and reminded the court of the affidavit that the defendant had filed, a few days earlier, explaining why a problem with the renewal of his passport was delaying his return to Connecticut.

The court inquired how the defendant expected to represent himself at this time when he was "one, not in the courthouse, and, two, not in the country." Bloomenthal replied that the defendant probably was hoping that the court would reconsider the request for a continuance so that his presence would not be necessary. Bloomenthal also reported that he had been unsuccessful in his efforts to contact the defendant, who had not returned his calls. Counsel for the plaintiff then informed the court that the defendant was a long-standing member of the Connecticut bar who had practiced law for a number of years. Counsel also noted that the in lieu of appearance filed by the defendant was unsigned. In reply, Bloomenthal suggested that "with respect to lack of signature on [the in lieu of appearance], taken in conjunction with his motion [for a continuance], which [the defendant] signed pro se, certainly indicates his intention to sign it."

The court rejected Bloomenthal's explanation, stating: "No, my fear is that he's being too cute by half. I mean, it's now becoming more clear to me what's going on now that I know that he used to be a member of the Connecticut bar and may still be; what do I know? My concern is that he certainly should know—at first I thought maybe he did the in lieu of by mistake, if he was a pro se party and wasn't quite sure what he was doing. But now that I am told that he's an attorney, I have no reason to believe that he did that by mistake.[3]

---

[3] We note that the court made no finding with respect to the defendant's status as a member of the Connecticut bar.

I'm just wondering if the not signing it is some further scheme to escape the powers of this court. I want to talk to counsel about it—I mean, the history of this file with [the defendant] is a history of noncompliance with various court orders. My concern is [that] this is simply another example of his refusal to comply with this court's orders and to cooperate in the prosecution of this case. His failure to cooperate with you is evidence of that. I mean, I understand that you are in a very difficult position. You are trying to communicate with him, and he's not communicating with you. You've got a trial date and no client. I'm not at all unsympathetic to the position that you are in, but I am not at all yet sympathetic to the position that [the defendant] has placed himself in. Mr. Marcus [counsel for the plaintiff], is there anything else you wanted to tell me?"

Counsel for the plaintiff replied: "Well, I was just going to say, Your Honor, earlier in this case, actually prior to Mr. Bloomenthal's appearance when [the defendant] chose not to obey the court's orders to appear and would come back and forth between Antigua and the U.S. on his schedule rather than on the court's schedule, there were many times that we proceeded in his absence on various motions; motion dealing with the pendente lite orders. That, of course, stopped when Mr. Bloomenthal appeared in the case and we had at least his appearance in the files. He leaves us in a terrible position. Your Honor actually continued this case approximately a month ago because he claimed to have a visa or passport problem. It appears that he has done nothing to solve his passport problem."

After expressing its understanding that a recent announcement by the United States Department of State should have resolved the defendant's passport problem, the court turned its attention to the defendant's motion for another continuance. In that regard,

the court stated: "The other thing that I found interesting when he filed his motion—his latest motion for a continuance, is [that] he's given an added reason that I have not heard before for his inability to be here, which is that he had business obligations. They appear to be obligations of long standing. The cynic in me believes that he's added that reason because he knows now that the reason related to his passport may no longer be even facially valid. Let me also say for the record that the burden was upon [the defendant] to prove to me that he was unable to get here because of reasons related to his passport and despite me giving him a substantial opportunity to do so, he's not taken advantage of that opportunity. . . . For the record, the appearance filed by [the defendant] with the court is not signed either so it's not a valid appearance. He hasn't signed it. I can't recognize this appearance. . . .

"[W]ith respect to the motion for continuance, I'm denying the motion for continuance and—this is somewhat odd, but I've been a judge now for fourteen years, and I've never done this before, but I don't find the affidavits to be credible. I mean, it's often that you have to determine that a witness is not credible, but based upon the history of this case and [the defendant's] refusal to cooperate with the court and with the plaintiff and with his refusal to follow court orders, there absolutely [is] no doubt in my mind, not a sliver of a doubt in my mind, that [the defendant] is intentionally failing to appear for trial here. So, I don't find his affidavits to be credible. I don't find that he's fulfilled his burden of proving his inability to be here. So the motion for continuance is denied."

The court also denied Bloomenthal's motion to withdraw. Although it agreed with Bloomenthal's representation that the defendant had received notice of the

withdrawal motion, it held that it would be too prejudicial to the rights of the defendant to allow a withdrawal on the day of trial.

I

Without challenging the findings of the trial court, the defendant maintains that the court violated his constitutional right to counsel by rejecting his in lieu of appearance and requiring his prior counsel, Bloomenthal, to conduct the trial. He cites case law that establishes a constitutional right to counsel in marital dissolution cases, which authorizes a trial court to overlook omissions from an appearance form. He maintains that he was entitled to an evidentiary hearing before his motion to represent himself was denied. He criticizes the court for attaching significance to the "technical defect" of his failure to sign his in lieu of appearance and yet acting on his motion for a continuance. Finally, he contends that the court was required to find that he cured this "technical" defect by sending the court a faxed filing to represent himself during the day of the trial on June 11, 2007.

The difficulty that we have with these various contentions is that none of them addresses the practical question that the court had to address. That question was how the defendant proposed to represent himself in court without being in the courtroom or, for that matter, without being in this country. The practical answer to the court's question was, of course, to be found in the defendant's simultaneous motion for yet another continuance for the trial of the case.[4] It is hornbook

---

[4] Although the defendant suggests in his appellate brief that the trial court could have responded in other ways to his nonappearance, he did not at trial ask the court to consider sanctioning him in other unspecified ways, as by holding him in contempt, forfeiting his right to make an opening statement or awarding monetary or other sanctions to the plaintiff. In *Ramin* v. *Ramin*, 281 Conn. 324, 915 A.2d 790 (2007), on which the defendant relies, our Supreme Court did not rule that the trial court was required, sua sponte, to take the steps that the defendant now advocates.

law that a court's decision whether to grant a motion for a continuance ordinarily is left to the court's discretion. See, e.g., *State* v. *Blake*, 289 Conn. 586, 595, 958 A.2d 1236 (2008). The unspoken implication in the defendant's argument is that a court has no such discretion if a defendant seeks a continuance in furtherance of his constitutional right to substitute new counsel for prior counsel. That implication follows from the defendant's failure to rebut, in any fashion, the reasons given by the court for denying his motion for a continuance. We know of no authority for such a limitation on the court's authority to control its docket. See, e.g., *Krevis* v. *Bridgeport*, supra, 262 Conn. 819. To the contrary, "[a] defendant has no unbridled right to discharge counsel *on the eve of trial. . . .* In order to work a delay by a last minute discharge of counsel there must exist exceptional circumstances." (Emphasis in original; internal quotation marks omitted.) *State* v. *Robinson*, supra, 227 Conn. 726.

II

In the alternative, the defendant contends that the trial court, in denying his motion to represent himself and his motion for a continuance, and in failing, on its own motion, to exclude evidence detrimental to his interests, violated his constitutional right to a fair trial. These contentions are unsustainable on their face.

The defendant has cited no authoritative precedent to support his contention that the constitutional law of due process gives him a right to self-representation and to a continuance whenever in the course of litigation he chooses to assert such rights. We already have addressed the merits of this claim in response to his reliance on his constitutional right to counsel. We see no need to repeat that discussion here.

The defendant also alleges that the court deprived him of his right to due process by its evidentiary rulings.

He maintains that the court improperly (1) took judicial notice of a press release relating to travel from the Caribbean to this country, (2) accepted the representation of his counsel that he continued to consent to a parenting agreement and (3) awarded financial relief and assigned property to the plaintiff.[5] Although the relevant evidence was admitted at trial without objection, the defendant claims that the record demonstrates a violation of his constitutional rights that entitles him to appellate review pursuant to *State* v. *Golding*, 213 Conn. 233, 567 A.2d 823 (1989). As our Supreme Court observed more than twenty-five years ago, "[t]he [*Golding*] rule is designed to protect fundamental constitutional rights. It deals with substance, not labels. Putting a constitutional tag on a nonconstitutional claim will no more change its essential character than calling a bull a cow will change its gender." *State* v. *Gooch*, 186 Conn. 17, 18, 438 A.2d 867 (1982). The defendant has not persuaded us that the evidentiary record demonstrates any impairment of his constitutional rights.

Finally, the defendant argues that the court violated his constitutional right to due process by denying a motion for reargument that he filed on June 12, 2007, the day after the trial had ended. In that motion, the defendant sought to reargue his motion for a continuance and attorney Bloomenthal's motion to withdraw as his counsel. Abandoning his motion to represent himself, he alleged that he was surprised by the nature of the plaintiff's financial claims and needed time to retain competent new counsel. In addition, he asserted

---

[5] The defendant does not dispute the accuracy of the trial court's observation that "[the defendant's] failure to file a sworn financial affidavit at trial in violation of his obligation to do so [pursuant to] Practice Book § 25-30 (a)" impaired "the ability of the plaintiff and the court to ascertain a complete picture of the defendant's financial circumstances." It hardly behooves the defendant now to argue that, because he failed to file this affidavit, it was improper for the court to hear the plaintiff's testimony about the property that she thought he owned.

that the court was required to "consider the interests of the minor children and permit them to be given the opportunity to be represented in these proceedings." The court denied the motion without opinion.

The only new issue raised in the defendant's motion related to the children's right to counsel. The defendant has raised it again in this appeal. Although the plaintiff does not dispute that the defendant had standing to raise the question of his children's right to counsel; see, e.g., *In re Christina M.*, 280 Conn. 474, 476, 908 A.2d 1073 (2006); *Yontef v. Yontef*, 185 Conn. 275, 283–84, 440 A.2d 899 (1981); she maintains that the issue was raised too late. We agree. To grant the defendant's motion would have required the court to reconvene and to reopen a trial that had already been concluded. We know of no authority for that proposition under the circumstances of this case, and the defendant has cited none.

## III

The defendant's final argument on appeal challenges the validity of the financial orders rendered by the trial court. As the defendant acknowledges, to prevail on this challenge, he must establish that the court's orders manifested an abuse of its discretion. See *Farrell-Williams v. Williams*, 99 Conn. App. 453, 455, 913 A.2d 1136 (2007).

The defendant maintains that the court's orders for a property division and for support and alimony[6] were an abuse of its discretion because the court had no factual basis for its awards. Without challenging the accuracy of the testimony about his financial circumstances that was given at trial, he asserts that his own failure to file the financial affidavit required by the rules of practice disabled the court from making any findings

---

[6] See footnote 1.

whatsoever about the property that he owned or the income that he received. Our case law has squarely rejected his argument. "Where a party's own wrongful conduct limits the financial evidence available to the court, that party cannot complain about the resulting calculation of a monetary award." *Leveston* v. *Leveston*, 182 Conn. 19, 24, 437 A.2d 819 (1980).

The judgment is affirmed.

In this opinion the other judges concurred.