WORTH CONSTRUCTION COMPANY, INC. *v.*
DEPARTMENT OF PUBLIC WORKS
(AC 33699)

Gruendel, Lavine and Borden, Js.

Argued September 6—officially released November 6, 2012

*Robert M. Shields, Jr.*, with whom was *Kenneth J. Bartschi*, for the appellant (plaintiff).

*George Jepsen*, attorney general, with whom was *Drew S. Graham*, assistant attorney general, for the appellee (defendant).

*Opinion*

GRUENDEL, J. The plaintiff, Worth Construction Company, Inc., appeals from the judgment of the trial court in favor of the defendant, the state department of public works. The plaintiff contends that the court erroneously found that the defendant did not waive its

claim to liquidated damages. We affirm the judgment of the trial court.

The relevant facts found by the court are as follows. On May 29, 2001, the plaintiff entered into a contract with the defendant to construct additions and renovations to Engelman Hall at Southern Connecticut State University for the sum of $33,497,050. The contract contained, inter alia, a liquidated damages clause that authorized the defendant to assess liquidated damages of $3000 per calendar day that the plaintiff failed to complete the project "within the [c]ontract [t]ime." The term "contract time" is defined in the contract as "[t]he period of time allotted in the [c]ontract . . . for [s]ubstantial [c]ompletion of the [w]ork . . . ."[1] Although the contract originally specified a period of 1068 calendar days for substantial completion, the parties subsequently executed a change order whereby an additional 394 calendar days were permitted. The plaintiff thus was required to attain substantial completion of the work within 1462 days, which period culminated on June 12, 2005. It is undisputed that the plaintiff reached substantial completion on August 25, 2005, seventy-four days after June 12, 2005.

In July, 2007, the plaintiff commenced a breach of contract action against the defendant, alleging that the defendant failed to pay a balance of $1,434,068.87. In response, the defendant filed an answer, three special defenses and a three count counterclaim. Relevant to the present appeal is the first count, in which the defendant averred that because the plaintiff "caused the [p]roject to suffer a delay of [seventy-four] calendar days," it was entitled to liquidated damages "at the daily rate of $3000 for a total of $222,000." A bench trial

---

[1] "Substantial completion" is defined in the contract as "[t]he stage in the progress of the [w]ork when the [w]ork or designated portion thereof is sufficiently complete in accordance with the [c]ontract [d]ocuments so the [o]wner can occupy or utilize the [w]ork for its intended use."

followed, at the conclusion of which the court found in favor of the defendant on both the plaintiff's complaint and the defendant's counterclaim for liquidated damages. The court awarded the defendant $222,222 in liquidated damages, and this appeal followed.[2]

On appeal, the plaintiff challenges only the court's award of liquidated damages.[3] It claims that the court's finding that the defendant did not waive its claim to said damages is clearly erroneous. We disagree.

It is well established that "[w]aiver is a question of fact." *AFSCME, Council 4, Local 704* v. *Dept. of Public Health*, 272 Conn. 617, 622, 866 A.2d 582 (2005). Accordingly, our review of a trial court's finding thereon is governed by the clearly erroneous standard. *Lehn* v. *Marconi Builders, LLC*, 120 Conn. App. 459, 465, 992 A.2d 1137 (2010). "A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. . . . In making this determination, every reasonable presumption must be given in favor of the trial court's ruling." (Internal quotation marks omitted.) *Gordon* v. *Tobias*, 262 Conn. 844, 849, 817 A.2d 683 (2003).

The following additional facts are relevant to the plaintiff's claim. After the plaintiff belatedly attained substantial completion of the work specified in the contract, the defendant's director of project management, Scott Jellison, notified the plaintiff via certified mail, on October 17, 2005, that "[p]er the [g]eneral [c]onditions

---

[2] The parties attribute the award of $222,222, rather than $222,000, to a typographical error. In its appellate brief, the plaintiff states that "[t]he $222 error is not material to this appeal."

[3] The plaintiff raises no claim with respect to the court's ruling in favor of the defendant on its complaint.

[s]ection 00700 of your contract, liquidated damages will be assessed for each day beyond the date given for substantial completion of the contract according to the contract time. Pursuant to the contract, [l]iquidated [d]amages will be assessed at the rate of $3000.00 per day for each day beyond the date for [s]ubstantial [c]ompletion. Pursuant to the contract . . . [the plaintiff] was required to attain [s]ubstantial [c]ompletion by June 12, 2005. Substantial [c]ompletion was not attained until August 26, 2005. Since [the plaintiff's] contract obligations were not met, this is to notify you that the [defendant] may assess liquidated damages at the rate of $3000.00 for each day beyond June 12, 2005, [through] August 26, 2005."

On November 22, 2005, the defendant's project manager, Randy Daigle, completed a "liquidated damage assessment field report" form. In so doing, Daigle miscalculated the period of time in which the plaintiff was to attain substantial performance. Although it is undisputed that the plaintiff was required to reach substantial completion of the work within 1462 days, Daigle erroneously indicated that the "total days allowed" was 1552. As a result of that mistake, Daigle concluded that because the plaintiff attained substantial completion within 1536 days, no days were "subject to liquidated damages." He, thus, checked the box for "I do not recommend [l]iquidated damages to be assessed" in the project manager's recommendation portion of the field report form. Kenneth Quimby, the defendant's supervising project manager, approved Daigle's field report on May 4, 2006. On that same date, Daigle submitted a "field evaluation report" that contained an identical miscalculation of the total days allowed for the plaintiff to attain substantial completion.

At trial, Daigle testified that he had miscalculated the total days allowed for substantial completion under the contract. He explained that he mistakenly included "the

punch list" period of ninety days in his calculations,[4] which resulted in his calculation of 1552 days instead of 1462. Daigle further testified that his recommendation not to assess liquidated damages was predicated on that miscalculation, and he agreed that the calculations contained in Jellison's October 17, 2005 letter to the plaintiff were accurate.

On appeal, the plaintiff asserts that the defendant "waived liquidated damages through the actions of . . . Daigle." It is well established that waiver is the "intentional relinquishment or abandonment of a known right or privilege." *Johnson* v. *Zerbst*, 304 U.S. 458, 464, 58 S. Ct. 1019, 82 L. Ed. 1461 (1938); *C. R. Klewin Northeast, LLC* v. *Bridgeport*, 282 Conn. 54, 86, 919 A.2d 1002 (2007). "Waiver is based upon a species of the principle of estoppel and where applicable it will be enforced as the estoppel would be enforced. . . . Estoppel has its roots in equity and stems from the voluntary conduct of a party whereby he is absolutely precluded, both at law and in equity, from asserting rights which might perhaps have otherwise existed . . . ." (Citation omitted; internal quotation marks omitted.) *AFSCME, Council 4, Local 704* v. *Dept. of Public Health*, supra, 272 Conn. 623.

As our Supreme Court has explained, "[a] necessary element to waiver is the requisite knowledge of the right. . . . Waiver presupposes a full knowledge of an existing right or privilege and something done designedly or knowingly to relinquish it." (Citations omitted.) *Reinke* v. *Greenwich Hospital Assn.*, 175 Conn. 24, 27, 392 A.2d 966 (1978). "[W]here one lacks knowledge of a right there is no basis upon which a waiver of it can rest." (Internal quotation marks omitted.) *Novella* v.

---

[4] A punch list generally is a list of items that a contractor is required to complete or to repair before final payment becomes due. See *FCM Group, Inc.* v. *Miller*, 300 Conn. 774, 783, 17 A.3d 40 (2011).

*Hartford Accident & Indemnity Co.*, 163 Conn. 552, 562, 316 A.2d 394 (1972). Accordingly, "[t]o determine the presence of waiver, there must be evidence of intelligent and intentional action by the petitioner of the right claimed to be waived. . . . It must be shown that the party understood its rights and voluntarily relinquished them anyway. . . . Each case should be considered upon the particular facts and circumstances surrounding that case, including the background, experience and conduct of the party that is waiving its rights." (Citations omitted; internal quotation marks omitted.) *Krevis* v. *Bridgeport,* 262 Conn. 813, 823, 817 A.2d 628, on remand, 80 Conn. App. 432, 835 A.2d 123 (2003), cert. denied, 267 Conn. 914, 841 A.2d 219 (2004).

The record in the present case plainly indicates that Daigle, at the time that he prepared the field reports at issue, lacked knowledge that the defendant had the right to assess liquidated damages against the plaintiff. Due to his miscalculation of the "total days allowed" to attain substantial completion, he concluded that the defendant was not entitled to assess any such damages. Daigle testified—and the trial court found in its memorandum of decision—that, but for that mistake of fact, his calculation would have agreed with Jellison's October 17, 2005 letter to the plaintiff notifying it that it was subject to liquidated damages due to its failure to attain substantial completion as required under the contract. Our Supreme Court has held that "[t]he basic conception of a waiver is that it is intentional; it cannot be established by a consent given under a mistake of fact." *Rosenthal* v. *State Bar Examining Committee,* 116 Conn. 409, 418, 165 A. 211 (1933); cf. *Reynolds* v. *Reynolds,* 121 Conn. 153, 157, 183 A. 394 (1936) (no finding by trial court that party against whom waiver was asserted "was laboring under a misapprehension of his rights"). The record is bereft of evidence indicating that

Daigle intelligently and intentionally waived the claim to liquidated damages.

In addition, we are mindful that the conduct of the parties is relevant to our waiver analysis. See *Rosado* v. *Bridgeport Roman Catholic Diocesan Corp.*, 292 Conn. 1, 58, 970 A.2d 656, cert. denied sub nom. *Bridgeport Roman Catholic Diocesan Corp.* v. *New York Times Co.*, 558 U.S. 991, 130 S. Ct. 500, 175 L. Ed. 2d 348 (2009); see also *New Haven* v. *Local 884, Council 4, AFSCME, AFL-CIO*, 237 Conn. 378, 388, 677 A.2d 1350 (1996); *Hensley* v. *Commissioner of Transportation*, 211 Conn. 173, 179, 558 A.2d 971 (1989). The contract entered into by the plaintiff provided that it would be subject to liquidated damages in the amount of $3000 per calendar day if it failed to attain substantial completion by the specified date. Because it is undisputed both that the plaintiff was required to attain substantial completion within 1462 days, or by June 12, 2005, and that it did not do so until August 25, 2005, its exposure to liquidated damages was obvious. Furthermore, the plaintiff received Jellison's October 17, 2005 letter notifying it that it was subject to liquidated damages due to its failure to attain substantial completion as required under the contract prior to Daigle's preparation of the field reports at issue. In light of the foregoing, we concur with the trial court that Daigle's field reports erroneously indicating 1552 total days allowed to attain substantial completion "contained a mathematical error which should have been obvious to [the plaintiff] on its face." At oral argument before this court, the plaintiff's counsel stated that he "can't disagree" with that assessment.

The plaintiff nevertheless relies on *Jenkins* v. *Indemnity Ins. Co.*, 152 Conn. 249, 205 A.2d 780 (1964), to support its claim of waiver. *Jenkins* involved an interspousal tort claim by a couple, with an insurance policy issued in New York, who had an automobile accident

in Connecticut. Id., 252. At issue was whether a certain New York statute disclaiming liability in such instances was applicable. Id., 253. Weeks after the accident occurred, the attorney for the plaintiff's wife informed the defendant insurance company that "there were legal questions as to coverage in interspousal actions where a policy was written in New York and an accident occurred in Connecticut, and that no additional information would be furnished the defendant's investigators unless it was understood that the defendant would accept coverage of the wife's claim." Id., 256. Thus, the defendant at that time was on notice of a possible question as to whether it was in fact liable. In response, the defendant wrote to the wife's attorney and "agreed to pay, within the limits of . . . [the] policy and subject to its provisions, any final judgment which was rendered against the insured . . . arising out of the accident." (Internal quotation marks omitted.) Id. Months later, after learning "of the seriousness of [the wife's] injuries and the extent of her medical bills," the defendant sent a subsequent letter to the attorney disclaiming coverage and stating that it was not waiving any claim as to the exclusion of liability under New York law. Id., 256–57. Although the trial court found that there was no waiver "because it did not appear that the defendant had any certain knowledge of its rights"; (internal quotation marks omitted) id., 257; under New York law, our Supreme Court concluded otherwise. Id., 258. The court reasoned that, because the wife's attorney had notified the defendant that a legal question existed as to the defendant's liability to provide coverage, the defendant was aware "of its right to claim that the New York insurance law denied coverage and of the possible, if not probable efficacy of such a claim." Id. The court emphasized that "[i]n order to waive a claim of law it is not necessary . . . that a party be certain of the correctness of the claim and its legal efficacy. It is enough if he knows of the existence of the claim and of its reasonably possible efficacy." Id., 257–58.

The present case is distinguishable from *Jenkins*. The record indicates that, at the time that he completed his reports, Daigle was unaware that a possible claim for liquidated damages existed against the plaintiff.[5] Due to his miscalculation of the total days allowed to reach substantial completion, he lacked knowledge that the defendant possessed a potential claim against the plaintiff. Moreover, that mistake of fact precluded Daigle from intelligently and intentionally waiving such a claim.

Waiver "involves the idea of assent, and assent is an act of understanding. This presupposes that the person to be affected has knowledge of his rights, but does not wish to assert them." (Internal quotation marks omitted.) *Harlach* v. *Metropolitan Property & Liability Ins. Co.*, 221 Conn. 185, 193, 602 A.2d 1007 (1992). This is not a case in which Daigle understood that the defendant had a right to pursue liquidated damages against the plaintiff, but declined to do so; rather, the record indicates that Daigle was unaware that the defendant possessed such a right. On the particular facts and circumstances of this case; see *Krevis* v. *Bridgeport*, supra, 262 Conn. 823; and indulging every reasonable presumption in favor of the court's ruling, we conclude that the court's finding that the defendant did not waive its claim to liquidated damages is not clearly erroneous.[6]

The judgment is affirmed.

In this opinion the other judges concurred.

---

[5] Although Daigle was copied on Jellison's October 17, 2005 letter to the defendant, he testified at trial that "being out in the field I'm not in the office all the time . . . and I get a tremendous amount of paperwork cc'd to me on all projects, and I didn't go through my inbox in time to—and I didn't notify him of my [report] and he didn't notify me he was doing this letter. . . . I wasn't in the office to receive [Jellison's letter] in the time that I was drafting up this [liquidated damage assessment field report]."

[6] In light of our conclusion that the court's finding is not clearly erroneous, we do not address the issue of whether Daigle was authorized to waive a claim for liquidated damages on behalf of the defendant.